[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 21, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-13923

_____

D. C. Docket No. 03-02931-CV-RWS-1

NATHANIEL PORTER, JR.,
HEATHER L. WILLIAMS,
PAMELA C. FRYE,
DEMETRICE L. PENNIE,
ALAN KEITH WALKER,
MARK S. HUDSON,
STEVIE HARRIS,
THOMAS K. VEITCH,
MARCIA ROSE WALL,
BETH ELLEN JACKSON,
CHRISTOPHER SCOTT HEFTLER,
NATHAN FISHER,

Plaintiffs-Appellants,

versus

WALTER S. RAY, JR.,
BOBBY K. WHITWORTH,
JAMES E. DONALD,
Commissioner, Ga DOC,
GARFIELD HAMMONDS,
BETTY ANN COOK, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(June 21, 2006)**

Before EDMONDSON, Chief Judge, and HILL and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

Twelve appellants, either currently or formerly incarcerated in the State of Georgia, appeal the district court's grant of summary judgment in favor of eight former and current members of the Georgia Board of Pardons and Paroles ("Board") on the appellants' claims that the Board retroactively applied a secret parole policy that extended their sentences beyond what they likely would have served under the guidelines and statutes applicable at the time they committed their offenses. For the reasons that follow, we affirm.

## I. Background

On December 9, 1997, the Board adopted a resolution amending its parole guidelines to provide that any offender convicted on or after January 1, 1998 for one or more of twenty enumerated offenses would be required to serve a minimum of 90% of the court-imposed term of incarceration before becoming eligible for an

initial parole hearing before the Board ("90% policy").[1]  As of December 9, 1997, the Georgia General Assembly required all prisoners to serve a minimum of "one-third of the prison term imposed by the sentencing court" before becoming eligible for an initial parole hearing before the Board.  O.C.G.A. § 42-9-45(f).  Additionally, the Board required an officer in the Board's Hearing Examiner Unit for Parole Decision Guidelines to apply the Parole Decision Guidelines ("Guidelines"), to consider parole eligibility data, and to calculate a tentative parole month ("TPM") for each inmate, which the Board voted to accept or reject.[2]  The hearing officers could not submit a TPM to the Board without also considering the minimum parole eligibility requirements: (1) the one-third time served requirement under O.C.G.A. § 42-9-45(f); and (2) the 90% policy.  The hearing

_____

[1] The enumerated offenses are attempted rape, voluntary manslaughter, aggravated battery on a police officer, aggravated battery, child molestation, hijacking a motor vehicle, robbery, aggravated assault on a police officer, aggravated assault (with injury or weapon), enticing a child for indecent purposes, cruelty to children, feticide, incest, statutory rape, criminal attempt to murder, bus hijacking, vehicular homicide (while DUI or habitual violator), involuntary manslaughter, aggravated stalking, and residential burglary.

[2] The Guidelines formula takes eight "parole success factors" into account when determining a prisoner's "parole success likelihood score."  These factors are: (1) the age at first commitment; (2) prior juvenile and adult felonies; (3) prior felony incarcerations since age seventeen; (4) failure to comply with probation or parole; (5) use, possession, or attempt to obtain heroin, opiates, and/or cocaine; (6) whether the commitment offense involved burglary or forgery; (7) whether the prisoner was fully employed for the six months preceding arrest on the current offense; and (8) the prisoner's score on a writing, reading, and arithmetic test.  The parole success likelihood scores range from 0-20 and are coupled with a severity-of-the-crime score to determine the number of months the Guidelines dictate the prisoner must serve before becoming eligible for parole.

3

examiners were instructed to recommend to the Board the lengthiest number of months-to-serve.

Prior to January 1, 1998, the hearing examiner's recommendation to the Board usually represented the greater of either: (1) the inmate's Guidelines score; or (2) one-third of the prison term imposed by the sentencing court. On and after January 1, 1998, the hearing examiner's recommendation to the Board as to an offender convicted of one or more of the twenty enumerated crimes usually represented the greater of either: (1) the inmate's Guidelines score; or (2) 90% of the inmate's court-imposed prison sentence.

At all relevant times, however, the Board retained the discretion to disagree with a recommendation under the Guidelines system and make an independent decision to deny parole or establish a TPM at any time prior to the expiration of the sentence. O.C.G.A. § 42-9-20 ("It shall be the duty of the board personally to study the cases of those inmates whom the board has power to consider so as to determine their ultimate fitness for such relief as the board has power to grant."); Ga. Comp. R. & Regs. 475-3-.05(5) ("The Board specifically reserves the right to exercise its discretion under Georgia Law to disagree with the recommendation resulting from application of the Parole Decision Guidelines and may make an independent decision to deny parole or establish a Tentative Parole Month at any

4

time prior to sentence expiration."). Additionally, Georgia law states that "[n]o inmate shall be placed on parole until and unless the board shall find that there is reasonable probability that, if he is so released, he will live and conduct himself as a respectable and law-abiding person and that his release will be compatible with his own welfare and the welfare of society." O.C.G.A. § 42-9-42(c). We have recognized that the Board has "virtually unfettered discretion to deviate both above and below the Guidelines recommendation in setting the TPM." Jones v. Ga. State Bd. of Pardons & Paroles, 59 F.3d 1145, 1150 (11th Cir. 1995).

In May 2002, in a separate action, the United States District Court for the Northern District of Georgia ruled that the retroactive application of the 90% policy to those individuals who committed their crimes before January 1, 1998 violates the Ex Post Facto Clause of the United States Constitution. Jackson v. Ga. Bd. of Pardons & Paroles, Civ. No. 2:01-CV-068-WCO, 2002 WL 1609804 (N.D. Ga. May 30, 2002). The Board did not appeal this decision. On September 9, 2002, the Board adopted a resolution ("2002 Resolution") in which it agreed not to apply the 90% policy to individuals who committed their offenses before January 1, 1998 and granted new hearings to determine a revised TPM for those individuals to whom the Board had impermissibly applied the 90% policy. The Board stated that it would remove any reference to the 90% policy from the subject prisoners'

5

parole files and would apply the parole regulations in effect at the time the individuals committed their offenses.

On September 29, 2003, Pamela Frye, Stevie Harris, Mark Hudson, Demetrice Pennie, Nathaniel Porter, Jr., Thomas Veitch, Alan Keith Walker, and Heather Williams, most of whom were convicted of one or more of the twenty enumerated offenses, initiated this action in the Northern District of Georgia against the members of the Board.[3]  After the Board answered, Nathan Fisher, Christopher Scott Heftler, Beth Ellen Jackson, and Marcia Rose Wall, all of whom were convicted of one or more of the twenty enumerated offenses before the effective date of the 90% policy, successfully moved to join the action as plaintiffs. The plaintiffs asserted claims under 42 U.S.C. § 1983, contending that the Board violated the Ex Post Facto and Due Process Clauses by continuing to apply a de facto 90% policy, even after the Board agreed not to apply the policy and to reconsider the TPMs for those individuals to whom the Board had impermissibly applied the 90% policy.  Plaintiffs sought equitable relief in the "form of an injunction enjoining the retroactive enforcement by the Board of the 90 percent policy and an order directing the Board to reconsider the Plaintiffs for release on parole in accordance with the laws and guidelines in effect at the time of the

---

[3] Hudson and Veitch were not convicted of one or more of the twenty enumerated offenses.

6

commission of their offenses."

The Board moved for summary judgment, asserting that it removed references to the 90% policy from the files of those individuals to whom the Board had impermissibly applied the policy and reconsidered their TPMs without regard to the 90% policy.[4] Shortly thereafter, the Board announced that it would no longer apply the 90% policy to anyone and would reconsider all cases affected by this change ("2005 Resolution").[5] When ruling on the defendant's motion for summary judgment, the district court stated that in light of the 2005 Resolution, the Board had agreed to reconsider TPMs of Fisher, Heftler, Pennie, Porter, Walker, and Williams without regard to the 90% policy, thereby making their requests for injunctive relief moot.[6]

---

[4] Pursuant to the 2002 Resolution, the Board reconsidered the TPMs of Fisher, Heftler, Pennie, Porter, Walker, and Williams, all of whom committed their offenses before the effective date of the 90% policy.

[5] The Board adopted the 2005 Resolution following a decision by the Superior Court of Fulton County ruling that the Board failed to follow the proper procedures when implementing the 90% policy. The court held that the 90% policy is "ineffective and has no force or effect." Because the Board had already agreed to reconsider the cases of those individuals who committed their offenses before January 1, 1998 and to whom the Board had applied the 90% policy, the practical effect of the court's ruling and the 2005 Resolution was to require the Board to reconsider the cases of those individuals who committed their offenses on or after January 1, 1998 and to whom the Board had applied the 90% policy.

[6] The district court also dismissed all the plaintiffs' claims for damages against the defendants in their individual capacities. The court ruled that as members of the Parole Board the defendants have absolute quasi-judicial immunity in a suit for damages. Fuller v. Ga. Bd. of Pardons & Paroles, 851 F.2d 1307, 1310 (11th Cir. 1988). The plaintiffs did not challenge this ruling in their initial brief; therefore, they waived it. Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004).

The district court concluded that the Board never applied the 90% policy to Frye, Harris, Hudson, Jackson, Veitch, and Wall because they either were not convicted of one or more of the twenty enumerated offenses or were sentenced before the 90% policy's effective date. The court directed those plaintiffs to provide supplemental briefing regarding their claims.

The remaining plaintiffs conceded that the Board never applied the 90% policy to them but contended that the Board applied a de facto 90% policy that resulted in their receiving sentences in excess of what they would have received had the Board faithfully applied the parole guidelines and statutes in effect at the time they committed their offenses. The court denied Wall's claims as moot because she had been released. The court also denied Veitch's claim because the Board agreed to rehear his request for parole.[7] As for Frye, Harris, Hudson, and Jackson, the court held that their claims were time-barred because they filed their claims after the two-year statute of limitations had run.

The plaintiffs appealed. After a full review of the record and the benefit of oral argument, we affirm.

---

[7] Additionally, the district court noted in its earlier order that the Board never considered Veitch under the 90% policy because his offense of conviction was not one of the twenty enumerated offenses. The district court did not discuss the relevance of this fact.

## II. Issues Raised and Standards of Review

The appellants raise four issues on appeal.[8]  First, the appellants argue that the district court erred in granting summary judgment for the Board on their ex post facto claim.  Second, the appellants argue that the district court erred in granting summary judgment for the Board on their due process claim.  Third, the appellants argue that the district court erred in dismissing some claims as untimely.  Finally, the appellants argue that the district court erred in denying their motion for in camera review of documents they requested through discovery.

We review the district court's grant of summary judgment de novo, applying the same standard the district court applied.  Lubetsky v. Applied Card Sys., Inc., 296 F.3d 1301, 1304 (11th Cir. 2002).  The court must grant summary judgment if the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The court should view the evidence and any

---

[8] We note that Issues 1, 2, and 4 apply only to appellants Fisher, Heftler, Pennie, Porter, Walker, and Williams.  Issue 3 applies only to appellants Frye, Harris, Hudson, Jackson, and Veitch.  Because of our resolution of Issue 3, Issue 4 does not apply to these appellants.  Although Veitch does not expressly challenge the district court's ruling that his claim is moot because the Board agreed to reconsider his case, we believe his claim is subsumed in the argument that the Board applied a de facto 90% policy.  The district court dismissed Wall's claims as moot because she was released on parole.  Therefore, Wall's claim is no longer subsumed in the other appellants' claim asking us to enjoin the Board from applying a de facto 90% policy.  Because she does not challenge the district court's mootness ruling, her claims are abandoned.

9

inferences that may be drawn in the light most favorable to the non-moving party. Lubetsky, 296 F.3d at 1304. The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party, who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993).

We review de novo the district court's interpretation and application of the statute of limitations. United States v. Gilbert, 136 F.3d 1451, 1453 (11th Cir. 1998). We commit discovery matters to the "sound discretion of the district court." Patterson v. U.S. Postal Serv., 901 F.2d 927, 929 (11th Cir. 1990).

### III. Discussion

A. Whether the District Court Erred in Denying the Ex Post Facto Claims

Article I, § 10 of the U.S. Constitution prohibits the states from passing any "ex post facto Law." The Ex Post Facto Clause is directed at laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." Collins v. Youngblood, 497 U.S. 37, 43 (1990). In California Department of Corrections v. Morales, the Supreme Court rejected the argument that the Ex Post Facto Clause prohibits "any legislative change that has any conceivable risk of

10

affecting a prisoner's punishment." Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 508 (1995). Instead, the Court held that the clause forbids only those retroactively applied laws that "produce[] a sufficient risk of increasing the measure of punishment attached to the covered crimes." Id. at 509.

The appellants spend considerable time arguing that the 90% policy violates the Ex Post Facto Clause and that the Board had to comply with the Northern District of Georgia's decision in Jackson. This case, however, does not concern whether the 90% policy violates the Ex Post Facto Clause because the Board abandoned the policy and reconsidered the TPMs of all individuals to whom the Board had applied the policy. Therefore, we express no opinion regarding the Jackson decision or the validity of the 90% policy. Instead, the issues are whether the Board applied a de facto 90% policy when reconsidering the appellants' TPMs and whether, if the de facto policy exists, it violates the Ex Post Facto Clause.

The appellants assert that the Board enacted and applied the 90% policy and continued to apply a de facto 90% policy even after abandoning the official 90% policy in order to obtain federal grants under the Violent Offenders Incarceration – Truth in Sentencing Act ("VOI/TIS"), 42 U.S.C. § 13704, et seq. VOI/TIS provided federal grants to build new prisons to states that complied with certain prerequisites, including requiring that certain violent offenders serve a substantial

percentage of their judicially imposed sentences. See, e.g., 42 U.S.C § 13704(a)(1)(C)(i), (ii). The appellants allege that to that end, in 1994, the Georgia legislature passed O.C.G.A. § 17-10-6.1, which at the time of passage, required that offenders convicted of rape, kidnapping, armed robbery, aggravated child molestation, aggravated sodomy or aggravated sexual battery serve 100 percent of their judicially imposed sentences. The appellants also allege that the Georgia legislature failed to enact a similar law that included more of the violent offenses listed in VOI/TIS, and in response, the Board approved the 90% policy to ensure that the State complied with VOI/TIS's requirements. In its application for VOI/TIS funds, the State of Georgia cited to the 90% policy as evidence that it met the Act's prerequisites. As of 2000, the State of Georgia had received over $82 million under VOI/TIS.

The appellants cite to statistics compiled by the Board following its reconsideration of individuals to whom the Board had impermissibly applied the 90% policy. According to the appellants' calculations, the reconsidered TPMs were on average 5.6 years greater than the Guidelines dictated and averaged 79% of the judicially imposed sentence as opposed to the one-third statutory threshold for parole eligibility. Nevertheless, these statistics are unavailing for two reasons. First, even assuming that the statistics could assist the appellants, the appellants fail

12

to offer any statistics that compare parole determinations given before the enactment of the 90% policy with those given under the alleged de facto 90% policy. Appellants' unsupported allegation that the Board strictly limited parole determinations before the enactment of the 90% policy to that dictated by the Guidelines and one-third statutory threshold is insufficient to meet the appellants' burden on summary judgment. Second, the Board has always had "virtually unfettered discretion" to vary a prisoner's TPM and need not comply strictly with the Guidelines or the one-third statutory threshold. Therefore, we doubt whether comparison statistics would assist the appellants in showing that the Board violated the Ex Post Facto Clause.

Most important, the appellants have failed to offer any evidence that the Board applied a de facto 90% policy to them. As detailed in the district court's order, the Board determined, based on the nature and circumstances of the cases of appellants Fisher, Heftler, Pennie, Porter, Walker, and Williams, that those individuals warranted TPMs longer than one-third of their judicially imposed sentences and greater than the Guidelines dictated.[9] Based on the Guidelines, each

---

[9] Fisher pleaded guilty to one count of statutory rape, nine counts of child molestation, nineteen counts of eavesdropping and surveillance, one count of sexual exploitation, and two counts of misdemeanor sexual battery for various incidents involving his fondling the vagina, buttocks, and breasts of children under sixteen, sexual intercourse with a child under sixteen, exposing his penis to a child under sixteen, and photographing or recording of activities of twenty children under sixteen in the bathroom. Heftler pleaded guilty to two counts of child molestation and incest for incidents of immoral and indecent sexual acts with his half-sister, who

13

of the appellants had an excellent or average parole success likelihood score. The Guidelines, however, place little emphasis on the nature and circumstances of the current offense, and the Board retained the discretion to determine, based on the nature and circumstances of the offenses, that these appellants should serve longer sentences before being paroled. We are convinced that the nature and circumstances of the appellants' offenses are so egregious that the Board met its burden on summary judgment by showing that no genuine issue of material fact exists as to whether the Board applied a de facto 90% policy, and the appellants did not meet their burden. We believe that the facts demonstrate that the Board merely exercised its discretion when determining the appellants' TPMs.[10] Having determined that the appellants did not meet their burden to show that the Board

_____

was under sixteen. Pennie was found guilty of voluntary manslaughter for shooting her boyfriend to death, dumping his body in a lake, and trying to conceal her wrongdoing. Porter was convicted of aggravated battery that resulted in the victim's loss of her left hand. Williams pleaded guilty to the lesser included offense of robbery for an incident in which she stole her victim's money, wallet, and vehicle and stabbed him with a knife. Walker was convicted of child molestation for touching and fondling the vagina of his four-year-old daughter.

[10] The district court ruled that the claims of Fisher, Heftler, Pennie, Porter, Walker, and Williams were moot because the Board agreed to reconsider their TPMs following the 2005 Resolution. The district court's ruling seems to be erroneous for two reasons. First, the Board had already reviewed these individuals' TPMs without regard to the 90% policy. Therefore, it is unlikely, and the record does not bear out, that the Board agreed to reconsider their TPMs after the 2005 Resolution. Second, regardless of whether the Board had already or planned to review these individuals' TPMs, their claims were still live because they argued the Board applied a de facto 90% policy to them. Nevertheless, for the reasons discussed in the text, we affirm the district court's judgment in favor of the Board. United States v. $121,100.00 in U.S. Currency, 999 F.2d 1503, 1507 (11th Cir. 1993) (holding that we can affirm a district court's grant of summary judgment for a reason not relied upon by the district court).

applied a de facto 90% policy, we do not address whether such a policy would violate the Ex Post Facto Clause.

B. Whether the District Court Erred in Denying Appellants' Due Process Claims

Next, the appellants contend that the Board's application of a de facto 90% policy violated their due process rights. A state parole system creates a liberty interest in parole that is subject to the protections of the Due Process Clause only when it establishes a legitimate expectation of parole. Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 12 (1979). In Sultenfuss v. Snow, we held that the Georgia parole system does not create a legitimate expectation of parole. Sultenfuss v. Snow, 35 F.3d 1494, 1503 (11th Cir. 1995) (en banc).

The appellants contend that the district court erred in relying on Sultenfuss because the Supreme Court's intervening decisions in Garner v. Jones, 529 U.S. 244 (2000), and California Department of Corrections v. Morales, 514 U.S. 499 (1995), overruled the test Sultenfuss used to determine whether the complainant had a liberty interest protected by the Due Process Clause of the U.S. Constitution. Instead, the appellants argue that we must analyze their liberty interest in light of the "real concerns undergirding the liberty protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483 n.5 (1995).

Contrary to appellants' argument, Garner cited Sultenfuss favorably, and we

consistently have applied Sultenfuss even after Garner and Morales. Because Georgia's parole system does not create a legitimate expectation of parole, the appellants cannot establish a due process violation here. Accordingly, even assuming that the Board applied a de facto 90% policy, the appellants' claim fails.

C. Whether the District Court Erred in Determining that Certain Appellants' Claims Were Time-Barred

Next, Frye, Harris, Hudson, Jackson, and Veitch argue that the district court erred in dismissing their claims as time-barred. "Federal courts apply their forum state's statute of limitations for personal injury actions to actions brought pursuant to 42 U.S.C. § 1983." Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003). Federal law determines when the statute of limitations begins to run; generally, "the statute of limitations does not begin to run until the facts that would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Id. In Georgia, the statute of limitations for personal injury actions is two years. O.C.G.A. § 9-3-33.

First, the appellants contend that their complaint was timely. They argue that the Board was required to review their TPMs following the 2002 Resolution, in which the Board agreed to reconsider the TPMs of all individuals who committed one or more of the twenty enumerated offenses before the January 1,

16

1998 effective date of the 90% policy and to whom the Board had applied the 90% policy. Therefore, according to the appellants, their September 29, 2003 complaint – or in Jackson's case, her February 12, 2004 motion to join – was timely because it was filed within two years of the September 9, 2002 Resolution.

By their admission, however, the appellants did not fall within the category of individuals to whom the Board had applied the 90% policy because they either were not convicted of one or more of the twenty enumerated offenses or were sentenced before the effective date of the 90% policy. The appellants do not allege that the Board applied the official 90% policy to them but contend that the Board applied a de facto 90% policy. Accordingly, the 2002 Resolution did not require the Board to review their TPMs. Because the appellants knew in either 1996 or 1998 that they would have to serve more than one-third of their judicially imposed sentences and longer sentences than the Guidelines dictated, their complaint was untimely.[11]

Next, the appellants contend that they are suffering a continuing violation each day they are imprisoned beyond one-third of their judicially imposed sentences or the TPM dictated by the Guidelines. As we noted in Lovett v. Ray and Brown v. Georgia Board of Pardons and Paroles, "the critical distinction in the

---

[11] Hudson learned of this fact in 1996, and the others learned in 1998.

17

continuing violation analysis is whether the plaintiff complains of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does." Brown v. Ga. Bd. of Pardons & Paroles, 335 F.3d 1259, 1261 (11th Cir. 2003) (citing Lovett, 327 F.3d at 1183).[12]

We reject the appellants' argument that they suffer a continuing violation each day they are imprisoned beyond one-third of their judicially imposed sentences or the TPM dictated by the Guidelines. The appellants analogize their situation to the Man in the Iron Mask, arguing that the Board, like cruel King Louis XIV, imprisons them at its will and with no hope of release. Yet, they differ from the Bastille-bound Philippe in one significant respect: they have judicially imposed sentences upon which the Board, or anyone for that matter, cannot extend their imprisonment. As we recognized in Jones, within that judicially imposed sentence, the Board exercises "virtually unfettered discretion." Jones, 59 F.3d at 1150. The statutory requirement that a prisoner serve at least one-third of his sentence before being eligible for parole is a minimum, and the Guidelines are, as the name

---

[12] According to the appellants, this case differs from our precedent in Lovett and Brown because this case involves a substantive extension of their sentences as opposed to a procedural change in the frequency of review of life sentences. However, because of the level of discretion that the Board retains and because the Board did not extend the sentences beyond the judicially imposed sentence, the Board's decisions here did not extend the appellants' sentences.

18

suggests, a guide, not hard and fast rules the Board must follow. Therefore, any injury that the appellants suffered was a one-time injury that occurred in 1996 or 1998 when they learned that they would have to serve sentences longer than one-third of their judicially imposed sentences and greater than the Guidelines dictated. Accordingly, the continuing violation doctrine does not save the appellants' untimely complaint.

D. Whether the District Court Erred in Denying Appellants' Motion to Discover Confidential Parole Board Records

The appellants moved for a hearing to determine whether to grant an in camera inspection of the appellants' parole files and statistics and documents from the Board that the appellants alleged would show that the Board was following a de facto 90% policy. The appellants' complete parole files are "confidential state secrets" under Georgia law. O.C.G.A. § 42-9-53. We agree with the district court's denial of the appellants' motion.

The appellants argue that the district court's ruling is contrary to due process and the Federal Rules of Civil Procedure. As the appellants illustrate, the law of our circuit is that "[g]enerally summary judgment is inappropriate when the party opposing the motion has been unable to obtain responses to his discovery requests." Snook v. Trust Co. of Ga. Bank of Savannah, N.A., 859 F.2d 865, 870-

71 (11th Cir. 1988). The appellants also correctly assert that courts must not blindly accept the Board's contention that the parole records are confidential.

Nevertheless, the discovery rules do not permit the appellants to go on a fishing expedition. As we noted earlier, the appellants' argument that statistics will prove that the Board has applied a de facto 90% policy is irrelevant here. The appellants have failed to demonstrate how the discovery they request will show that the Board applied a de facto 90% policy to them. Furthermore, even though we do not blindly accept the Board's claim of confidentiality, we find that the appellants' allegations are insufficient to meet their burden when requesting discovery that the State of Georgia has deemed confidential. McGoy v. Ray, 164 F. App'x 876, 878 (11th Cir. 2006) (per curiam) (unpublished). Consequently, we hold that the district court did not abuse its discretion in denying the appellants' request for an in camera inspection of their parole files and documents and statistics from the Board.

## IV. Conclusion

For the foregoing reasons, we affirm the district court on all claims.