CORRECTED OPINION
 

 COPE, J.
 

 On consideration of the appellants’ motion for rehearing and rehearing en banc, the court withdraws its previous opinion and substitutes the following corrected opinion.
 

 This is an appeal of a temporary injunction and an order granting leave to record a judgment. With some qualifications, we affirm.
 

 I.
 

 As stated in the parties’ earlier appeal:
 

 Plaintiff Fortune Development Sales Corporation obtained a final judgment for $1,509,899 against defendant-appellant Wavestone Properties, LLC. The judgment was entered after a bench trial determining that Wavestone had breached an exclusive real estate listing agreement between Fortune, as broker, and Wavestone.
 

 Wavestone and defendant-appellant 17315 Collins Avenue, LLC are parent and subsidiary companies. The subsidiary, 17315, owns real estate at 17315 Collins Avenue on which a condominium building is being developed. The parent company, Wavestone, owns the membership interests in 17315, and is the managing member of 17315.
 

 In 2003, Wavestone and Fortune entered into the exclusive real estate listing agreement whereby Fortune would market and sell the condominium units. Wavestone later terminated that agreement. After a bench trial, the court found Wavestone had breached the contract. The court awarded $1,509,899 in damages.
 

 Fortune initiated proceedings supplementary. See § 56.29, Fla. Stat. (2007). At a hearing, the trial court imposed a temporary injunction freezing the net proceeds from the closing of sales of the condominium units. The court also pierced the corporate veil and allowed
 
 *168
 
 the judgment against Wavestone to operate as a lien against the real estate owned by 17315.
 

 Wavestone Properties, LLC v. Fortune Development Sales Corp.,
 
 978 So.2d 830, 830-31 (Fla. 3d DCA 2008). We affirmed the temporary injunction as to Wavestone, but reversed all relief against 17315 because of insufficient notice.
 
 Id.
 
 at 831-32.
 

 On remand Fortune moved for injunc-tive and other relief and gave proper notice. By order dated June 24, 2009, the court imposed a temporary injunction enjoining 17315 from disbursing proceeds of the closing of sales of condominium units, net of existing debt. The court also authorized the recording of Fortune’s judgment as a lien against the real property of 17315. As clarified at oral argument, Fortune must release the judgment lien as to each condominium unit as closings occur. 17315 and Wavestone have appealed.
 

 II.
 

 The main question is whether the trial court erred by piercing the corporate veil in this case. “[T]he corporate veil may not be pierced absent a showing of improper conduct.”
 
 Dania Jai-Alai Palace, Inc. v. Sykes,
 
 450 So.2d 1114, 1121 (Fla.1984). We have said:
 

 “[T]o pierce the corporate veil under Florida law, it must be shown not only that the wholly-owned subsidiary is a mere instrumentality of the parent corporation but also that the subsidiary was organized or used by the parent to mislead creditors or to perpetrate a fraud upon them.” In determining whether the corporate veil should be pierced, the relationship between the parent corporation and its subsidiary must be examined.
 

 Ocala Breeders’ Sales Co. v. Hialeah, Inc.,
 
 735 So.2d 542, 543 (Fla. 3d DCA 1999) (citations omitted).
 

 First, the record supports the determination that the two companies operated as alter egos. The actual owner, developer, and operating entity was 17315. Wavestone owns the membership interests of 17315 and is the managing member. Wavestone does not, however, conduct any operations, have any employees or payroll, or have any bank accounts. All expenses are paid by the subsidiary 17315. Both companies were single purpose entities which existed solely for the development of the 17315 property. The principal of Wavestone acknowledged that there was little distinction between the entities.
 

 The next question is whether the parent Wavestone, used the subsidiary 17315 for an improper purpose. We conclude that the answer is yes.
 

 In September 2003, 17315 purchased vacant land located at 17315 Collins Avenue in Miami-Dade County. At the time 17315 purchased the land, Wavestone owned seventy-five percent of the membership interests in 17315 and subsequently became the owner of one hundred percent of the membership interests. Wavestone is the managing member of 17315. Wavestone and 17315 planned to (and eventually did) build a high-rise condominium building.
 

 In October 2003 Wavestone and Fortune entered into an Exclusive Agency Listing Agreement (“the Fortune Agreement”) whereby Fortune would be the exclusive sales agent for the condominium units in the building.
 

 In November 2003, Wavestone terminated the Fortune Agreement. 17315 then entered into an Exclusive Agency Listing Agreement with a different company, Prodigy Development Sales, LLC (“the Prodigy Agreement”). The Prodigy Agreement contained an indemnification provision, whereby Prodigy agreed to in
 
 *169
 
 demnify Wavestone and 17315 for claims that Fortune might make as a result of the termination of the Fortune Agreement.
 

 In February 2004, Fortune filed suit against Wavestone alleging breach of the Fortune Agreement. In October 2004, 17315 obtained a construction loan of approximately $47 million, secured by a mortgage on the property. At the same time, Wavestone obtained a mezzanine loan of $10 million (later increased to $13 million), the proceeds of which also went to 17315 for construction of the condominium project. 17315 acted as the developer, and ultimately constructed a condominium building consisting of twenty-three stories and 147 units.
 

 In March 2007, the trial court entered judgment against Wavestone, and in favor of Fortune, for $1,509,889 for breach of the Fortune Agreement.
 
 [1]
 
 Thereafter Fortune initiated proceedings supplementary to execution.
 
 See
 
 § 56.29, Fla. Stat. (2007).
 

 In April 2008, Wavestone and 17315 invoked the indemnity provision of the Prodigy Agreement. Thereafter 17315 withheld $250,000 in real estate commissions from Prodigy at the closings on the sale of a number of condominium units. The purpose was to make funds available for partial payment of the amounts which Wave-stone owed Fortune under its judgment.
 

 The condominium project encountered financial difficulties. Wavestone placed the $250,000 in 17315’s operating accounts. Thus the funds which had been intended for Fortune (and withheld from Prodigy) were instead taken and used for the condominium project.
 

 In our view, Wavestone used the corporate entities for an improper purpose when it depleted the $250,000 amount.
 
 See Steinhardt v. Banks,
 
 511 So.2d 336, 338-39 (Fla. 4th DCA 1987). Fortune was unable to reach these or any other proceeds of the closings, because its contract was with, and the judgment was against, Wavestone only, not 17315. Acting as manager of 17315, Wavestone was in a position first to create a fund within 17315 which was earmarked for Fortune but was beyond its reach. Wavestone then caused the same funds to be depleted by 17315 without paying the obligation. We affirm the trial court’s decision to pierce the corporate veil.
 

 III.
 

 The trial court also found that Fortune had been misled by Wavestone at the time that Fortune and Wavestone entered into the Fortune Agreement. Wavestone and 17315 argue that this finding is not supported by the record. Because we have affirmed the temporary injunction on the grounds stated in the previous section, we need not reach this particular issue.
 

 The trial court also found that the mezzanine loan in this case amounted to a fraudulent conveyance. We specifically disapprove that determination. The sole purpose of Wavestone and 17315 was the development of this condominium property, and the proceeds of the mezzanine loan were disbursed to 17315 for that purpose.
 

 17315 argues that it is impermissible to use a temporary injunction in this context. We disagree. This case is now in proceedings supplementary. A temporary injunction is a permissible remedy.
 
 See Tabet v. Tabet,
 
 644 So.2d 557, 560 (Fla. 3d DCA 1994);
 
 Zeuda Corp. v. Grancolombiana Corp. Financiera, S.A.,
 
 610 So.2d 509, 510 (Fla. 3d DCA 1992);
 
 Warten v. Caguas Cent. Federal Sav. Bank,
 
 567 So.2d 42 (Fla. 3d DCA 1990).
 

 
 *170
 
 Finally, 17315 argues that the bond is inadequate. This issue was not presented during the evidentiary hearing. Our affir-mance of the order now before us is without prejudice to 17315 and Wavestone to file an appropriate motion in the trial court to increase the bond.
 

 IV.
 

 In conclusion, the temporary injunction is affirmed. We affirm the order allowing the imposition of the judgment lien against the property of 17315, with the express condition that Fortune must release the judgment lien as to each condominium unit as closings occur. Wavestone and 17315 may file a motion in the trial court to increase the bond. These rulings are effective immediately and will not be delayed by the filing of a motion for rehearing or other postdecision motion.
 
 *
 

 Affirmed.
 

 [1]
 

 . The trial court subsequently entered an Agreed Charging Order against Wavestone's membership interests in 17315.
 
 See
 
 § 608.433(4), Fla. Stat. (2008).
 

 *
 

 This court's previously-entered stay is vacated.