ROY B. DALTON JR., United States District Judge
Before the Court are Plaintiff's partial motion for summary judgment (Doc. 162) and Defendant Resurrection Life THC, Inc.'s ("RLTHC ") motion for summary judgment (Doc. 164). These cross-motions for summary judgment have been fully briefed (See Docs. 193-96.) For the following reasons, the Court grants RLTHC's motion for summary judgment and denies Plaintiff's partial motion for summary judgment.
I. BACKGROUND
This case stems from a copyright infringement suit brought against Plaintiff by Paula White Ministries ("PWM ") in 2014. See Paula White Ministries v. Johnson , Case No. 6:14-cv-497-Orl31DAB, Doc. 1, March 27, 2014 ("Prior Suit "). Plaintiff runs a website and posts videos seeking to expose Defendant Paula Michelle White ("White ") as a false prophet. (See id. Doc. 16, p. 1.) Citing fair use, Plaintiff vehemently opposed the Prior Suit and vigorously litigated it. (See id. Docs. 32, 34-36, 37.) Hoping to quell Plaintiff, PWM moved to dismiss the complaint with prejudice (Id. Doc. 37), which U.S. District Judge Gregory A. Presnell granted (Id. Doc. 40.) At the same time, Judge Presnell noted that if Plaintiff "wishes to pursue affirmative relief against [PWM] for malicious prosecution, she may do so by filing a separate complaint." (Id. ) Plaintiff did so, proceeding pro se , and initiated this action for malicious prosecution against Defendants White, New Destiny Christian Center, Inc. ("NDCC "), and Paula Michelle Ministries, Inc. ("PMMI "), on October 8, 2015. (Doc. 1.)
*1284 Six months later, Plaintiff sought leave to file an amended complaint to add RLTHC as a party. (Doc. 63.) She alleged that after NDCC was served with her complaint for malicious prosecution, it formed a title holding company named RLTHC, which she contended was a sham corporation fraudulently formed by NDCC, PMMI, and White to shield them from direct liability. (Id. ¶¶ 2-6.) Finding these allegations sufficient to state a claim to pierce the corporate veil under the alter ego theory of Florida law, U.S. Magistrate Judge Gregory J. Kelly permitted Plaintiff to add RLTHC as a party. (Doc. 75.) Plaintiff then filed her third amended complaint, bringing a malicious prosecution claim against PMMI, White, and NDCC (Doc. 76, ¶¶ 58-90) and a piercing the corporate veil, "alter-ego/sham corporation" claim against RLTHC, alleging it was the alter-ego of NDCC (Id. ¶¶ 15-57.)
Meanwhile, the case proceeded to discovery. This quickly turned contentious, as Plaintiff sought financial documents and information from White, NDCC, and PMMI ("Financial Information "). (See Docs. 67-72.) After these requests ping-ponged to no avail, Plaintiff filed motions to compel production of the Financial Information. (Docs. 67-72.) In a series of successive rulings, White, NDCC, and PMMI were ordered to produce the Financial Information in part. (See Docs. 78, 103, 115, 131, 138, 144; see also Doc. 183, pp. 3-11 (detailing these rulings).) They did not fully comply, so Plaintiff moved for default judgment against these defendants. (Doc. 152 ("Default Motion ").) In a comprehensive ruling, this Court granted the Default Motion due to White, NDCC, and PMMI's willful and bad faith noncompliance with court orders. (See Doc. 183.)
Plaintiff's claims against RLTHC, however, remained, and Plaintiff informed the Court that she still wished to pursue them. (See id. at 27; Doc. 184.) Both Plaintiff and RLTHC filed cross-motions for summary judgment and responses on the issue of whether RLTHC's corporate veil could be pierced under sham corporation and alter ego theories of liability. (Docs. 162, 164, 193-96.) The matters are now ripe for adjudication.
II. LEGAL STANDARD
Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) ; Celotex Corp. v. Catrett , 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As to issues for which the movant would bear the burden of proof at trial, the "movant must affirmatively show the absence of a genuine issue of material fact and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." Landolfi v. City of Melbourne, Fla. , 515 Fed.Appx. 832, 834 (11th Cir. 2013) (citing Fitzpatrick v. City of Atlanta , 2 F.3d 1112, 1115 (11th Cir. 1993) ). As to issues for which the non-movant would bear the burden of proof at trial, the movant has two options: (1) the movant may simply point out an absence of evidence to support the non-moving party's case; or (2) the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." U.S. v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. , 941 F.2d 1428, 1438 (11th Cir. 1991) (citing Celotex Corp. , 477 U.S. at 325, 106 S.Ct. 2548 ).
"The burden then shifts to the non-moving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." Porter v. Ray , 461 F.3d 1315, 1320 (11th Cir. 2006) (citing Fitzpatrick , 2 F.3d at 1115-17 ). "A factual dispute is genuine 'if the evidence is such that a reasonable *1285 jury could return a verdict for the nonmoving party.' " Four Parcels , 941 F.2d at 1437 (quoting Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ).
The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. Battle v. Bd. of Regents , 468 F.3d 755, 759 (11th Cir. 2006). However, "[a] court need not permit a case to go to a jury ... when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.' " Mize v. Jefferson City Bd. of Educ. , 93 F.3d 739, 743 (11th Cir. 1996).
III. UNDISPUTED FACTS [1]
Paula White is currently the Senior Pastor-President of NDCC. (Docs. 152-15, ¶ 2; 162-4, p. 12.) NDCC is a corporation first incorporated on June 7, 1996 by Pastor Zachery Tims in Orlando, Florida to operate as a church. (See Doc. 194-1, pp. 1-4.) Since then, NDCC's leadership has changed and grown. (See, e.g., id. at 5-7.) Its board of directors currently has six members, including White, and NDCC is now located at 505 E. McCormick Rd, Apopka, FL 32703. (Doc. 162-4, pp. 1, 12.)
Over the years, White has been associated with different organizations. Beyond NDCC, these include the fictitious name Paula White Ministries and the corporations Paula Michelle Ministries, Inc. and Resurrection Life THC, Inc. (See Docs. 152-11, 152-12, 164-7.) Of these, PWM is seemingly the oldest as its registration can be traced back at least to March 22, 2002. (See Doc. 164-3.) After PWM, PMMI comes next-it filed articles of incorporation on August 29, 2011. (Doc. 162-3.) Soon thereafter, PWM was registered to PMMI on February 13, 2012. (Doc. 164-3.) PWM didn't stay with PMMI long; NDCC registered PWM on May 2, 2014 (Doc. 164-4), and PMMI administratively dissolved on August 11, 2014 (Doc. 1-C).
Finally comes RLTHC, the entity here with the shortest lifespan. It filed articles of incorporation on December 18, 2015, but this was about the only thing it did. (See Doc. 164-7). After incorporation, RLTHC was "inactive." (Doc. 164-8.) It had "no day-to-day operations since its inception," "no employees, assets, [or] bank accounts," and did not register with the IRS. (Doc. 162-14.) Although its listed purpose in its articles of incorporation was "holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to [NDCC]," RLTHC never did these things. (Docs. 164-7, 162-14.) Indeed, no assets or titles were transferred to or from RLTHC since its formation, nor did RLTHC receive income from any rentals, turn over income to NDCC, or issue checks to anyone, including employees. (See Docs. 162-14, 194-4.) RLTHC never operated.[2] It was administratively *1286 dissolved on September 23, 2016, and Defendants have no plans to reinstate it. (Docs. 164-8; 162-14, p. 5.)
By contrast, PMMI engaged in active operations. It had employees, day-to-day operations, dispensed payroll, and owned the PWM name. (Docs. 152-11, 152-12, 164-3.) And while PMMI owned PWM, PWM brought the Prior Suit suit against Plaintiff. (Doc. 164-3); see Paula White Ministries v. Johnson , Case No. 6:14-cv-497-Orl31DAB, Doc. 1, March 27, 2014. During the course of the Prior Suit, PMMI administratively dissolved and NDCC took over ownership of PWM, which retained control of PMMI's assets. (See Docs. 164-4; 1-C; 152-11; 152-12.) With this, the entities directly involved in the Prior Suit were PWM, PMMI, and NDCC-not RLTHC. (See Docs. 162, p. 22, 196, p. 2, 194, p.4.) As default judgment has been entered against White, PMMI, and NDCC (Doc. 183), the only way for Plaintiff to recover against RLTHC here is by piercing its corporate veil (see Doc. 76, ¶¶ 40-57; see also Doc. 164-2, p. 21 (Plaintiff's deposition) ). Now, at summary judgment, the Court must determine whether Plaintiff's claim holds any water.
IV. DISCUSSION
Florida disregards the corporate entity "in only the most extraordinary cases." In re Hillsborough Holdings Corp. , 166 B.R. 461, 468 (Bankr. M.D. Fla. 1994.)"Those who seek to pierce the corporate veil ... carry a very heavy burden." Id. As the Florida Supreme Court recognized, "the corporate veil will not be penetrated either at law or in equity unless it is shown that the corporation was organized or employed to mislead creditors or to work a fraud upon them." Dania Jai-Alai Palace, Inc. v. Sykes , 450 So.2d 1114, 1120 (Fla. 1984) (quoting Advertects, Inc. v. Sawyer Industries, Inc. , 84 So.2d 21, 23 (Fla. 1955) ). This heavy showing recognizes that "[e]very corporation is organized as a business organization to create a legal entity that can do business in its own right and on its own credit as distinguished from the credit and assets of its individual stockholders." Id. Further, "[t]he mere fact that one or two individuals own and control the stock structure of a corporation does not lead inevitably to the conclusion that the corporate entity is a fraud or that it is necessarily the alter ego of its stockholders." Id.
In practice, therefore, "there must be persuasive proof of shareholder misconduct before a [c]ourt will pierce the corporate veil." In re Hillsborough , 166 B.R. at 469. This is "proof of deliberate misuse of the corporate form-tantamount to fraud." Id. Such deliberate misconduct can be shown by closely examining the relationship between the shareholder and the corporation-there must be indicators that the corporation was a "mere device or sham to accomplish some ulterior purpose," "evade some statute," "employed by the stockholders for fraudulent or misleading purposes," "organized or used to mislead creditors," or "evade existing personal liability." Id. (citing Steinhardt v. Banks , 511 So.2d 336 (Fla. 4th DCA) (per curiam), rev. denied 518 So.2d 1273 (Fla. 1987) ); Ocala Breeders' Sales Co. v. Hialeah, Inc. , 235 So.2d 542, 543 (Fla. 2d DCA 1999). Notably, evidence demonstrating an absence of corporate formalities, lack of equity capital, proof of domination and control, and that a corporation was used as vehicle for personal interests is not "the correct standard" to pierce the corporate veil. See Barkett v. Hardy , 571 So.2d 13, 14 (Fla. 2d DCA 1990). The key, therefore, is deliberate improper conduct.[3] See id. This is required for all claims to pierce the corporate *1287 veil, whether they espouse alter-ego or sham corporation theories.[4] See Dania, at 1120-21 (collapsing alter-ego theory into piercing the corporate veil doctrine).
Here, Plaintiff seeks to pierce RLTHC's corporate veil. (Docs. 76, ¶¶ 40-57; 162, pp. 22-25; 193 pp. 4-8.) According to Plaintiff's Complaint, RLTHC "was organized and incorporated with the fraudulent and improper purpose of holding the assets of NDCC/PWM, shielding NDCC/PWM from liability and defrauding Plaintiff and other creditors." (Doc. 76, ¶ 41.) Such allegations sufficiently stated a claim for piercing the corporate veil at the complaint stage (see Doc. 75), but now, the proof of the pudding is in the eating. To withstand Defendant's motion for summary judgment, or to be granted summary judgment, Plaintiff must support her allegations with evidence. See Porter , 461 F.3d at 1320. As the record before the Court reveals, this she cannot do.
First up is Plaintiff's assertion that RLTHC was formed as part of "an illegal scheme to fraudulently convey or conceal NDCC/PWM's and possibly Defendant White's assets so that they could not be reached by this lawsuit." (Doc. 162, p. 23.) Her sole support for this fraudulent purpose argument is that RLTHC was formed on December 18, 2015, sixteen days after Plaintiff served summons for this suit on White, NDCC, and PMMI. (Id. at 22.) Putting aside the fact that these dates aren't entirely correct,[5] this fact tells the Court nothing about RLTHC's purpose for forming. Rather, the record evidence reflects that RLTHC was formed for a legitimate business purpose-to hold title to property for NDCC-and Plaintiff provided no evidence to controvert this. (See Docs 162, pp. 22-23; 164-7; 196, p. 8.) Alone, the proximity of RLTHC's formation to White, NDCC, and PMMI receiving summons of Plaintiff's suit does not constitute the requisite improper purpose to pierce its corporate veil. See Steinhardt , 511 So.2d at 339 ; cf. 17315 Collins Ave. , 34 So.3d at 168-69 (finding improper purpose of subsidiary because parent placed funds in subsidiary instead of satisfying obligation and subsidiary depleted funds). Thus, the Court considers other evidence to support Plaintiff's theory.
Next, Plaintiff points out that RLTHC had no day-to-day operations, employees, assets, bank accounts, or income; and shared a principal and mailing address with NDCC as "more evidence that RLTHC was merely a sham corporation." (Doc. 162, p. 23.) Actually, just the opposite. RLTHC and NDCC had no relationship because, by all accounts, RLTHC did nothing from its formation until its dissolution. (See Docs. 162-14; 162-2, p. 21 (Plaintiff's deposition).) What is more, that RLTHC never operated, never had assets or expenses, and never exchanged in transfers with NDCC conclusively establishes *1288 that RLTHC was neither a sham corporation nor NDCC's alter ego. See, e.g., Bookworld Trade Inc. , 532 F.Supp.2d at 1360 (finding Plaintiff's "unsupported allegations" insufficient to pierce corporate veil as "[t]here is no evidence that Smith used Bookworld to defraud existing personal or corporate creditors, by transferring funds into or out of the corporation").[6] With this, Plaintiff's theory that NDCC established and used RLTHC to escape liability by hiding assets there is plainly unsupported. (Compare Docs. 162, p. 23; 196, p. 3 with Docs. 162-14; 194-4 (Plaintiff's arguments with RLTHC's documents).) Here, the absence of evidence is evidence of absence. The Court cannot pierce RLTHC's corporate veil on this record.
Having said that, it is clear that RLTHC has no further place in this action. As both Plaintiff and Defendants recognized, RLTHC's involvement and potential liability here hinged on piercing its corporate veil. (See Docs. 196, p. 2, 194, p.4.) And because that is not happening, the Court need not address the parties' other arguments. (See Docs. 162, 164). Summary judgment is granted for RLTHC and denied for Plaintiff.
V. CONCLUSION
Accordingly, it is ORDERED AND ADJUDGED as follows:
1. Defendant Resurrection Life THC, Inc's Dispositive Motion for Final Summary Judgment with Incorporated Memorandum of Law (Doc. 164) is GRANTED .
2. As to Defendant RLTHC, Plaintiff's Second Renewed and Amended Verified Motion for Partial Summary Judgment on the Issue of Liability and Defendants' Affirmative Defenses; with Incorporated Memorandum of Law (Doc. 162) is DENIED .
3. The Clerk is DIRECTED to enter judgment in favor of Defendant Resurrection Life THC, Inc's and against Plaintiff Shirley Jn Johnson on Plaintiff's piercing the corporate veil claims set forth in Plaintiff's Third Amended Verified Complaint for Malicious Prosecution (Doc. 76, ¶¶ 40-57).
DONE AND ORDERED in Chambers in Orlando, Florida, on April 2, 2018.

For the purpose of resolving a summary judgment motion, the Court ordinarily presents the facts in the light most favorable to the non-moving party. See Battle , 468 F.3d at 759. Here, however, both parties move for summary judgment, and the material underlying facts are not in dispute-rather, it is only the inferences drawn from those facts that are in dispute. Therefore, in the following section the Court presents the undisputed facts from the record evidence.

In Plaintiff's MSJ reply, she cited a document called "RLTHC's bylaws." (Doc. 196, p. 2.) These "bylaws" were provided to Plaintiff during discovery before RLTHC was added as a party, and were the subject of one of her motions to compel. (See Docs. 69, p. 5; 69-1; see also Doc. 103, p. 10 (noting that RLTHC's bylaws appear to have been produced already).) But these "bylaws" are unsigned and undated, so the Court will not consider them as representative of RLTHC's affairs. (See Doc. 69-1, p. 6.) Notably, the only depositions in this action were submitted by Defendants; Plaintiff did not introduce any depositions, including individuals affiliated with RLTHC. (See Docs. 164-2, 194-3.)

See also In re Hillsborough , 166 B.R. at 469 ; Dania , 450 So.2d at 1120 ; Bookworld Trade Inc. v. Daughters of St. Paul, Inc. , 532 F.Supp.2d 1350, 1361 (M.D. Fla. 2007).

In any event, the distinction between these two theories seems to be one without a difference. Florida courts employ both terms to depict how the corporate veil can be pierced-so the Court will not quibble over labels here. Indeed, whether the subsidiary is the "mere instrumentality" or "alter ego" of the parent company, or the subsidiary was formed as "sham corporation" all drives at the same question and analysis. See, e.g., Dania , 450 So.2d at 1118-21 ; Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc. , 162 F.3d 1290, 1320 (11th Cir. 1998) (describing corporate veil analysis); Matter of Multiponics , 622 F.2d 709, 724-25 (5th Cir. 1980) (defining alter ego doctrine relationship); 17315 Collins Ave., LLC v. Fortune Dev. Sales Corp. , 34 So.3d 166, 168 (Fla. 2d DCA 2010).

RLTHC's Articles of Incorporation were signed by its incorporator on December 9, 2015 and then filed by the State of Florida on December 18, 2015. (See Doc. 164-7.) Return of service for NDCC was executed on December 2, 2015; but return of service for PMMI and White wasn't executed until December 12, 2015. (Docs. 23-25.)

See also Johnson Enters. of Jacksonville, Inc. , 162 F.3d at 1320-21 (finding "no evidence that [parent] used [subsidiary] for the purpose of engaging in improper conduct"); cf. Estudios, Proyectos e Inversiones de Centro Am., S.A. (EPICA) v. Swiss Bank Corp. (Overseas) S.A. , 507 So.2d 1119, 1121 (Fla. 3d DCA 1987) (piercing corporate veil on evidence that corporation formed "to secrete [creator's] personal assets and thereby defraud his creditors); 17315 Collins Ave , 34 So.3d at 168-69.