A07A0879. SHAFE et al. v. AMERICAN STATES INSURANCE COMPANY.

(653 SE2d 870)

MILLER, Judge.

James C. Shafe, Sales & Management Training Institute of Atlanta, Inc., and Career Training Concepts, Inc. appeal from a grant of summary judgment entered in favor of their insurer, American States Insurance Company ("American States"), finding that no coverage exists under insurance policies issued to them by American States for certain claims asserted against them. Discerning no error, we affirm.

---

"On appeal from a grant of summary judgment, we conduct a de novo review of the evidence to determine if there exists a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, entitle the movant to judgment as a matter of law. [Cit.]" *Smith v. Atlantic Mut. Cos.*, 283 Ga. App. 349, 350 (641 SE2d 586) (2007).

So viewed, the evidence shows that Shafe is the chief executive officer of Career Training Concepts, Inc. ("CTC"), a closely held company that produces and sells career guidance materials. CTC is the successor in interest to Sales & Management Training Institute of Atlanta, Inc. ("SMT"), another closely held corporation of which Shafe served as chief executive officer. From March 1, 1999 until March 1, 2005, American States insured SMT and CTC under a series of commercial general liability policies (collectively "the Policy").[1]

In 1987, SMT entered into a written contract with Jeannette Nicholson and Career Assessment Atlanta, Inc. (collectively "Nicholson") for the development of career assessment tools, including an "Interest Inventory," to be included in a SMT publication entitled "Career Direction." The agreement explicitly provided that SMT was to retain ownership rights in all work created thereunder by Nicholson.

In late 1993, SMT reached an oral agreement with Nicholson whereby she would develop a different "Interest Inventory" for inclusion in a new publication entitled "Future Focus." A dispute later developed between the parties over compensation owed Nicholson for this work, with SMT (and later CTC) claiming that it was covered under the parties' 1987 agreement, and Nicholson claiming that the 1987 contract covered only the work created for the Career Direction publication.

In 2003, Nicholson sued Shafe, SMT, and CTC (collectively the "Insureds") in federal district court, asserting federal law claims for copyright infringement and state and common law claims for breach of contract, deceptive trade practices and false association, unfair competition, fraud and misrepresentation, and unjust enrichment. The Insureds submitted this claim to American States, which provided them with a defense of the same under the Policy. Policy coverage with respect to the federal court action was based upon the allegations in Nicholson's complaint that the Insureds had misappropriated her work.

---

[1] SMT was the named insured under the Policy from March 1, 1999 until February 12, 2004. By an endorsement to the Policy effective February 12, 2004, CTC replaced SMT as the named insured.

On May 18, 2005, the district court granted summary judgment to the Insureds on Nicholson's federal copyright law infringement claim. In doing so, the federal court found that Future Focus represented a joint work between the Insureds and Nicholson, and that the parties each held a copyright in the same — i.e., they were co-owners of that material. Thus, while Nicholson could sue the Insureds for her share of the profits received from their use of Future Focus, she could not sue them for copyright infringement. Having found that Nicholson could not state a claim under the federal copyright laws, the federal court declined to exercise pendent jurisdiction over her state law claims and dismissed them without prejudice.

Nicholson then filed suit against the Insureds in Gwinnett County Superior Court ("the underlying action"), seeking an accounting of profits received from Future Focus and an imposition of a constructive trust upon the same, and asserting claims for unjust enrichment, breach of fiduciary duty, common law fraud, and constructive fraud. The Insureds tendered this claim to American States, and requested a defense and indemnification for the same under the Policy. American States denied coverage, and brought the current action seeking a declaratory judgment as to its obligations under the insurance contract. The trial court granted summary judgment in favor of American States, finding that the claims asserted in the underlying action were not covered under the Policy, and this appeal followed.

The question before us is whether American States is obligated to defend the Insureds in the underlying action. This question is separate and independent from the issue of whether American States would be required to indemnify the Insureds for any damages recovered against them in that action, because an insurer's duty to defend is broader than its duty to indemnify. See *Penn-America Ins. Co. v. Disabled American Veterans*, 224 Ga. App. 557, 559 (481 SE2d 850) (1997). To ascertain an insurer's duty to defend, we first examine the allegations of the complaint in conjunction with the relevant policy language "to determine whether a liability covered by the policy *is asserted*." (Emphasis in original.) Id. at 558.

The Insureds contend that they are entitled to a defense of the underlying action under that part of the Policy providing coverage for claims resulting from "personal and advertising injury." Included in the Policy's definition of personal and advertising injury is injury resulting from the "[m]isappropriation of advertising ideas or style of doing business" or "arising out of . . . [t]he use of another's advertising idea in your 'advertisement.' " The Policy defines "advertisement," in relevant part, as "a notice that is broadcast or published to the

general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."

When read in conjunction with the foregoing language, it is clear that the claims asserted in the underlying action did not arise out of an advertising injury. Specifically, there is no allegation that the Insureds misappropriated an idea or style of business belonging to Nicholson. Rather, the relevant facts asserted in support of Nicholson's claims are that she and the Insureds co-own Future Focus, that the Insureds have and continue to use, license, sell, and otherwise commercially exploit that publication, and that the Insureds owe her a portion of the profits derived from their continued use of the same. Moreover, all of the asserted claims (for an accounting and imposition of a constructive trust, unjust enrichment, breach of fiduciary duty, fraud, constructive fraud, and conversion) are stated in terms of one business partner forcing the other to account for and pay profits owed. As a result, the nature of the claims asserted place them outside the scope of Policy coverage.

The Insureds appear to concede this fact, but nevertheless claim they are entitled to a defense under the rule that where the "complaint on its face shows that there is no coverage, but the insured notifies the insurer . . . of additional facts that would place the claim within the policy coverage, the insurer must consider such facts when deciding whether it has an obligation to defend the claim. [Cit.]" *Yeomans & Assoc. Agency v. Bowen Tree Surgeons*, 274 Ga. App. 738, 745 (1) (b) (618 SE2d 673) (2005). They point to the affidavit of Shafe, submitted in an attempt to defeat American States' motion for summary judgment, in which he asserted that (i) the Future Focus publication "is not sold as an individual product to customers"; (ii) the Insureds have not realized any "specific revenue" from the sale of that product and that they have derived a benefit therefrom only in using it as a "marketing and advertising tool"; and (iii) in a demand letter, counsel for Nicholson alleged that the work was used as part of "a multi-program marketing tool" and asserted a claim based on "the strategic marketing benefits realized by [the Insureds] as a result of [Nicholson's] contributions." Shafe then concludes that, given these facts, Nicholson's claim is based on the theory that the Insureds "misappropriated [Nicholson's] ideas and expressions in marketing and advertisements."

On appeal, the Insureds contend that Shafe's evaluation of and conclusions regarding the true nature of the claims asserted in the underlying action represent "facts" beyond the scope of the pleadings that entitle them to a defense under the Policy. This reasoning, however, misconstrues the applicable law, which does not allow an insured to create coverage simply by "reinterpreting" the factual

allegations made so as to come within the scope of the insurance contract. Rather, the rule requires that, if the complaint fails to allege facts that bring the claim within policy coverage, a duty to defend may nevertheless exist where the insured informs the insurer of additional *facts* related to the claim that would entitle him to a defense of the same under the policy. See *Yeomans & Assoc.*, supra, 274 Ga. App. at 745 (1) (b). Here, the only additional facts alleged in Shafe's affidavit are that the Insureds derived no specific profit from the sale of Future Focus, and that any benefits derived from that work resulted from the Insureds' use of the same in marketing their services. Assuming arguendo the truth of these assertions, they are insufficient to transform Nicholson's claims into ones arising out of an advertising injury.

Neither the question of whether the Insureds received a "specific" profit from the sale of Future Focus or whether their use of that publication was limited to their marketing activities is determinative of the issue of Policy coverage. The Policy covers liability resulting from certain conduct, including an insured's *misappropriation* of another's idea or style of doing business in its advertising. What the Insureds' argument fails to recognize is that the mere use of another's material in their advertising does not invoke coverage; rather, there must be an allegation that the Insureds' use of such material was wrongful — i.e., that they were not otherwise entitled to use the same.[2]

For purposes of the coverage question before us, therefore, the critical question is whether Nicholson's complaint alleges such conduct. In other words, does it allege that the Insureds' use of Nicholson's work in Future Focus was wrongful — i.e., that the Insureds misappropriated that work? This question is answered definitively by the federal court summary judgment order entered in Nicholson's initial action, which forecloses any possibility that the claims in the underlying action arose from the Insureds' misappropriation or other wrongful use of Nicholson's work. "Under the doctrine of collateral estoppel, . . . [in a] second action [between the same parties] upon a different cause of action . . . the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." (Citations, punctuation and emphasis omitted.) *Phinazee v. Interstate Nationalease*, 237 Ga. App. 39, 41 (514 SE2d 843) (1999). In its order, the federal court found, as a matter of law,

---

[2] This interpretation of the Policy is supported not only by a plain reading of the relevant language contained therein, but also by the long-recognized principle that the purpose of liability policies is to protect insureds from their own tortious, negligent conduct. See, e.g., *Langford v. Milwaukee Ins. Co.*, 101 Ga. App. 92, 93 (113 SE2d 165) (1960); 7A Lee R. Russ, et al., Couch on Ins., § 103:119 (3d ed.).

that because Future Focus was a joint work, co-owned by the Insureds and Nicholson, Nicholson could not assert a copyright infringement claim against the Insureds for their use of that material. This ruling, in turn, prevents Nicholson from asserting that the Insureds misappropriated her work for inclusion in Future Focus; by definition, one cannot misappropriate that which one owns. See *Dowling v. United States*, 473 U. S. 207, 217 (105 SC 3127, 87 LE2d 152) (1985) (defining copyright infringement as including the misappropriation of copyrighted work).

Finally, the question of whether the Insureds have received any "specific" profits from the direct sale of Future Focus is irrelevant to the issue of Policy coverage. The amount of profits, if any, realized from the Insureds' use of Future Focus goes only to the question of Nicholson's damages. With respect to Policy coverage, however, the issue is what conduct caused those damages. The allegations of Nicholson's complaint make clear that the damages claimed resulted not from the Insureds' wrongful use of Future Focus in their advertising, but rather from the Insureds' failure to pay Nicholson monies owed as a result of their lawful use of Future Focus, for whatever purpose. Accordingly, the Policy provides no coverage for such claims.

For the reasons set forth above, we affirm the order of the trial court finding that no coverage exists under the Policy at issue for the claims asserted against Shafe, SMT, and CTC in the underlying action and granting summary judgment in favor of American States.

*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED NOVEMBER 8, 2007.

*Hill, Kertscher & Wharton, Blakely H. Frye, Myers & Kaplan, Ashish D. Patel*, for appellants.

*Barrickman, Allred & Young, William S. Allred*, for appellee.