[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11006

_____

D.C. Docket No. 1:11-cv-04401-WSD


TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,
ST. PAUL FIRE AND MARINE INSURANCE COMPANY,

Plaintiffs - Counter
Defendants - Appellees,


versus

THE KANSAS CITY LANDSMEN, L.L.C.,
d.b.a. Budget Rent a Car,
A BETTERWAY RENT-A-CAR, INC.,

Defendants - Counter
Claimants - Appellants.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 12, 2015)

Before WILSON, ROSENBAUM, and BLACK, Circuit Judges.

ROSENBAUM, Circuit Judge:

In this case, we address whether the appellee insurers owe a duty to defend their appellant insureds against a lawsuit alleging that the insureds willfully violated 15 U.S.C. § 1681c(g)(1), a provision of the Fair and Accurate Credit Transaction Act ("FACTA") that prohibits "print[ing] more than the last five digits of the [credit][1] card number or the expiration date upon any receipt provided to the cardholder . . . ."  The answer to this inquiry depends on whether the underlying lawsuit against the insureds arguably alleges two things:  (1) that the insureds acted with an intent that could be characterized as "willful" though not "knowing" and (2) that the insureds provided non-truncated receipts of credit-card account owners to people other than the owners of the credit cards used to conduct the transactions.

We find that the answer to the first question is "yes," so if our review stopped here, we would reverse the district court's entry of a declaratory judgment stating that the insurers have no duty to defend the insureds.  But we must also address the second issue, which turns on whether § 1681c(g)(1), the statute that the insureds are alleged to have violated, prohibits vendors from providing non-

---

[1] The term "credit card" as used in this opinion includes "debit cards" as well.  For the sake of simplicity, however, we refer to credit cards only.

2

truncated credit-card receipts to their customers for credit-card accounts that their customers do not own.  If the answer to this question is "yes," the insurance companies have a duty to defend, but if it is "no," they do not.

This question appears to be one of first impression, and we think that it would likely benefit from briefing focused directly on it.  In addition, the Federal Trade Commission, which is charged with administering the Fair Credit Reporting Act, which FACTA amended, may wish to be heard on the issue.  For these reasons, we reverse the judgment of the district court ruling that the insurance companies had no duty to defend the insureds, and we remand for the district court to determine whether § 1681c(g)(1) prohibits vendors from providing their non-credit-card-account-holding customers with non-conforming receipts of their credit-card-account-holding customers.

## I.

### *A.  The Underlying Lawsuit Against the Insureds*

In the District Court for the Western District of Missouri, Case No. 4:11-cv-01020 (the "*Galloway* Action"), Robert Galloway filed a putative class-action lawsuit against Defendants-Appellants, The Kansas City Landsmen, LLC, d/b/a Budget Rent A Car ("KC Landsmen"), and A Betterway Rent-a-Car, Inc. ("Betterway") (collectively, the "Car Rental Companies"), in the pending case.  In the *Galloway* Action, Galloway alleged that the Car Rental Companies had

3

violated the provision of FACTA that provides, in relevant part, "[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."

Specifically, the *Galloway* Action alleged that the Car Rental Companies had printed credit-card receipts that included more than the last five digits of the card number as well as the card's expiration date and accordingly had "failed to protect [Galloway] and others similarly situated against identity theft and credit card and debit card fraud . . . ." Galloway sought statutory and punitive damages on behalf of himself and the class that he proposed to represent, under 15 U.S.C. § 1681n(a), which imposes liability on "[a]ny person who willfully fails to comply with any requirement" of FACTA.[2]

## *B. The Pending Case*

In the appeal now before us, Plaintiffs-Appellees Travelers Property Casualty Company of America ("Travelers"), and St. Paul Fire and Marine Insurance Company ("St. Paul") (collectively, "Insurance Companies") filed suit in the Northern District of Georgia for a declaratory judgment that they were not obligated to defend or indemnify their insureds, the Car Rental Companies, in the

---

[2] Section 1681*o* allows a plaintiff to prove and recover actual damages for negligent violations of FACTA. *See* 15 U.S.C. § 1681*o*. In the *Galloway* Action, however, Galloway limited his and the proposed class's claims to "willful" violations.

underlying *Galloway* Action. The Car Rental Companies counterclaimed for breach of contract and bad faith arising from the Insurance Companies' failure to defend or indemnify them. Because the parties' claims turn on whether the insurance-policy agreements made between the Insurance Companies and the Car Rental Companies provide coverage for the Car Rental Companies' alleged FACTA violations in the *Galloway* Action, we review the applicable parts of the insurance policies that govern.

### 1.  The Insurance Policies

Travelers issued four primary commercial general-liability insurance policies to Betterway (the "Travelers Policies").[3] St. Paul also issued four excess commercial general-liability insurance policies to Betterway (the "St. Paul Policies") (together with the Travelers Policies, the "Policies").[4] Appellant KC Landsmen is a named insured on all of the Policies. As relevant to this appeal, the Travelers Policies are identical to one another, as are the St. Paul Policies.

The Travelers Policies insure the Car Rental Companies for damages arising from various injuries, including "personal injury" suffered by third parties. Coverage B of the commercial general-liability part of the Travelers Policies was

---

[3] The Travelers Policies covered consecutive one-year terms. The first policy's coverage began on May 1, 2008, and the last policy's coverage terminated on May 1, 2012.

[4] Like the Travelers Policies, the St. Paul Policies covered consecutive one-year terms and contained the same start and end dates as their Travelers counterparts. *See supra* note 3.

amended by a "WEB XTEND LIABILITY" Endorsement to provide insurance coverage for "personal injury" stemming from the insured's business:

> **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** (SECTION I – COVERAGES) is deleted in its entirety and replaced by the following:
> **COVERAGE B. PERSONAL INJURY, ADVERTISING INJURY AND WEB SITE INJURY LIABILITY**
>
> **1.      Insuring Agreement.**
>
> > **a.**      We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury," "advertising injury" or "web site injury" to which this insurance applies . . .
> >
> > **\* \* \* \***
> >
> > **b.**      This insurance applies to:
> >
> > > (1)      "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

The Web Endorsement defines "personal injury," in turn, as follows:

> "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:
>
> **\* \* \* \***
>
> **e.**      Oral, written or electronic publication of material that appropriates a person's likeness, unreasonably

6

places a person in a false light or gives unreasonable publicity to a person's private life.[5]

But the Travelers Policies also contain provisions that exclude from coverage "personal injury" knowingly inflicted by the insured:

> This insurance does not apply to:
>
> **a.    Knowing Violation of Rights of Another**
> "Personal . . . injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal injury" .
> . . .

Like the Travelers Policies, the St. Paul Policies also cover "personal injury":

> **1. Coverage**
>
> **A.** We will pay on behalf of:
>
> 1.      the **Insured** all sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay damages by reason of liability imposed by law; or
>
> 2.      the **Named Insured** all sums in excess of the **Retained Limit** that the **Named Insured** becomes legally

---

[5] The district court noted that "[t]he parties appear to dispute whether 'personal injury' coverage exists under the main body of the Travelers Policies or under an endorsement to the Travelers Policies. Both the main body and the endorsement contain the same Knowing Violation Exclusion. . . . [T]he Court finds that the parties' dispute over the source of 'personal injury' coverage is not material to Plaintiffs' Motion for Summary Judgment." We agree with the district court.

The significant difference between the two policies pertains to the way in which they define "personal injury." In relevant part, the main body of the policies defines it as follows: "Oral or written publication, *in any manner*, that violates *a person's right of privacy*." (Emphasis added to highlight the differences). The resolution of this issue has no bearing on the outcome of this case, so we do not analyze which version controls.

obligated to pay as damages assumed by the **Named Insured** under an **Insured Contract**;

because of:

\* \* \* \*

2.    **Personal Injury** or **Advertising Injury** that is caused by an **Occurrence** committed during the **Policy Period**

The St. Paul Policies define "personal injury," in relevant part, as follows:

Q.    **Personal Injury** means injury . . . caused by . . .:

\* \* \* \*

5.    oral, written or electronic publication of material that violates a person's right of privacy.

Also like the Travelers Policies, the St. Paul Policies exclude coverage of "personal injury" knowingly caused by the insured:

This insurance does not apply to:

. . .

J.    **Known Violation of Rights**
**Personal Injury** or **Advertising Injury** caused by or committed at the direction of the **Insured**, or by an offense committed at the direction of the **Insured**, with knowledge that the rights of another would be violated and that **Personal Injury** or **Advertising Injury** would result.

## 2.  The District Court's Opinion and Order

8

The Insurance Companies moved for summary judgment, and the district court granted the Insurance Companies' motion on all claims before it, finding that the claims in the *Galloway* Action alleged only knowing violations of FACTA, which were excluded from coverage under the Policies. In reaching this conclusion, the district court rejected the Car Rental Companies' argument that they could be found liable under the *Galloway* Action for reckless violations of FACTA—conduct that would not be excluded from coverage under the policies. Because the district court determined that the insureds were excluded from coverage under the knowing-conduct exclusions to the Policies, the district court did not consider whether the insureds enjoyed coverage in the first place for issuing non-conforming credit-card receipts to customers who did not own the credit-card accounts for which the receipts were issued.

## II.

We review a district court's grant of summary judgment *de novo*, drawing all inferences in the light most favorable to the non-moving party. *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013). Summary judgment is proper where no genuine dispute exists as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Contract interpretation, including of insurance-related agreements, raises a question of law

9

and is subject to *de novo* review.  *Am Cas. Co. of Reading, Pa. v. Etowah Bank*, 288 F.3d 1282, 1285 (11th Cir. 2002).

## III.

When jurisdiction is based on diversity, such as in this case, the forum state's choice-of-law rules govern which state's substantive law applies.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S. Ct. 1020 (1941).  Here, Georgia was the forum state.

Georgia's choice-of-law rules, in turn, dictate that insurance contracts are interpreted under the laws of the place where the contract is made.  *Avemco Ins. Co. v. Rollins*, 380 F. Supp. 869, 872 (N.D. Ga.), *aff'd mem.*, 500 F.2d 1182 (5th Cir. 1974).[6]  Georgia law also provides that a contract is made at the place where it is delivered.  *Id.*; *see Casey Enterprises, Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. Unit B 1981) ("Under Georgia law the place of the delivery of the insurance contract controls.").[7]  The insurance contracts in this case were delivered in Georgia, so, as both parties agree, Georgia substantive law controls.

Under Georgia law governing the interpretation of insurance contracts, "an insurer's duty to defend is broader than its duty to indemnify."  *Shafe v. Am. States Ins. Co.*, 653 S.E.2d 870, 873 (Ga. Ct. App. 2007).  "Although an insurer need not

---

[6] Opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.  *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

[7] Opinions of the Fifth Circuit Unit B are binding precedent in the Eleventh Circuit.  *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

indemnify an insured for a liability the insured incurs outside the terms of the insurance contract, an insurer must provide a defense against any complaint that, if successful, might potentially or arguably fall within the policy's coverage." *Elan Pharm. Research Corp. v. Emp'rs Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998). Therefore, "[e]ven if some of [the] allegations ultimately [a]re not found to be covered by the policy," the insurer still has a duty to defend the entire action if any of the claims might be. *Nationwide Mut. Fire Ins. Co. v. Somers*, 591 S.E.2d 430, 434 (Ga. Ct. App. 2003).

To determine whether a claim against an insured falls within the insured's coverage, triggering the insurer's duty to defend, we must compare the allegations of the underlying complaint against the provisions of the policy. *See id.* at 433. If the complaint against the insured does not assert any claim that could fall within the policy's coverage provisions, the insurer is justified in refusing to defend. *See id.* "[D]oubt as to [the] liability and [the] insurer's duty to defend should be resolved in favor of the insured." *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 490 S.E.2d 374, 376 (Ga. 1997) (citation and quotation marks omitted).

Normally, we might conduct our analysis by first determining whether the alleged conduct was covered under the coverage provisions of any insurance policy, and, if so, then evaluating whether any exclusion provisions of the applicable policy precluded coverage. In this matter, however, the district court

believed a policy exclusion to be applicable, so it had no reason to consider whether the conduct alleged in the *Galloway* Action fit within the coverage provisions of the Policies.  Neither would we, if we agreed with the district court that the exclusion provisions preclude coverage of the claims in the *Galloway* Action.  We therefore begin our analysis by addressing the exclusion provisions.

### *A.  The Exclusion Provisions*

An insurer has no duty to defend when the allegations in an underlying complaint are excluded by a specific policy provision.  *See*, *e.g.*, *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 498 S.E.2d 782, 784 (Ga. Ct. App. 1998); *Cont'l Graphic Servs., Inc. v. Cont'l Cas. Co.*, 681 F.2d 743, 745 (11th Cir. 1982) (applying Georgia law).  An insurer can rely solely on the allegations contained within the complaint to establish that a policy exclusion precludes coverage.  *First Specialty Ins. Corp. v. Flowers*, 644 S.E.2d 453, 455 (Ga. Ct. App. 2007) (citation omitted).

Here, Galloway's underlying putative class-action lawsuit sought to impose liability on the Car Rental Companies for committing "willful" FACTA violations under § 1681n.  The Supreme Court has held that "willfulness," as defined in § 1681n, encompasses not only "knowing" violations, but also those committed in "reckless disregard" of the statute's requirements.  *See Safeco Ins. Co. v. Burr*, 551 U.S. 47, 71, 127 S. Ct. 2201, 2216 (2007).

12

In this case, the distinction between the two levels of "willful" intent is especially important:  as the parties agree, "knowing" violations are excluded from coverage, but violations committed with "reckless disregard" are not.  The district court concluded that the *Galloway* complaint asserted "willful" FACTA violations under the "knowing" level of intent only, so the district court determined that the Policies precluded coverage under their knowing-conduct exclusions.  We respectfully disagree.

In reaching its conclusion that the *Galloway* Action charged only "knowing" "willful" violations, the district relied on the following four paragraphs of the *Galloway* complaint:

> 57. At the time of the FACTA violations identified in this Complaint and before, Defendants *knew* of their obligations under FACTA . . . .
>
> 60. Despite *knowledge* of FACTA's requirements . . . , Defendants continued to willfully disregard FACTA's requirements . . . .
>
> 63. Defendants *knew* of and failed to comply with their legal duty [under FACTA] . . . .
>
> 65. Notwithstanding all of the publicity and the Defendants' *knowledge* of the statute's requirements, they willfully failed to comply with FACTA . . . .

The "knowledge" allegations in these paragraphs, though, go only to the Car Rental Companies' alleged knowledge of FACTA's *requirements*, not their

knowledge of any alleged *violations* of its requirements.[8]  But Section 1681n, the section on which the *Galloway* Action is premised, concerns itself with the defendant's mental state as it relates to alleged non-compliance—*i.e.*, violations—only, not with the defendant's mental state with regard to the statute's requirements.  *See* 15 U.S.C. § 1681n ("Civil liability for *willful noncompliance*. (a) In general[:]  Any person who *willfully fails to comply* with any [FACTA] requirement . . . is liable . . . .") (emphasis added).

Paragraph 65 of the *Galloway* complaint perhaps best exemplifies the distinction that the *Galloway* complaint makes between the Car Rental Companies' mental state with regard to FACTA's requirements and their mental state as it relates to any alleged violations that they may have committed.  It reads, "Notwithstanding . . . the Defendants' *knowledge* of the statute's *requirements*, they *willfully failed to comply* with FACTA . . . ," meaning that they both knew of FACTA's requirements *and* that they failed to comply with them either knowingly *or* with reckless disregard.  Even the Insurance Companies' motion for summary judgment acknowledges that "[the underlying complaint] alleges that Defendants' *violations* were *willful* and that the *willful violations* entitled the class to recover . .

---

[8] And even the allegations related to the Car Rental Companies' knowledge of FACTA's requirements, read in the context of the other allegations of the complaint, assert only that the Car Rental Companies had *notice* of FACTA's requirements, not that they had subjective knowledge of FACTA's requirements.  But notice does not necessarily equate with actual knowledge.

14

. damages . . . ." Conspicuously absent from the complaint is any allegation that the *violations* were *knowing*.

Nor does any other aspect of the *Galloway* complaint necessarily limit its allegations against the Car Rental Companies to violations of § 1681n conducted knowingly, as opposed to those committed with reckless disregard. It matters not that the *Galloway* complaint does not use the phrase "reckless disregard" specifically because the *Galloway* complaint alleges that the Car Rental Companies acted "willfully" when they violated § 1681c(g)(1). Under *Safeco*, this means that the *Galloway* plaintiffs can succeed on their claims if they show that the Car Rental Companies acted either "knowingly" *or* with "reckless disregard." *See* 551 U.S. at 71, 127 S. Ct. at 2216. Indeed, if, under the *Galloway* complaint, the *Galloway* plaintiffs asked for a jury instruction explaining that where "willful" violations are alleged, they can be proven by evidence of either knowledge or reckless disregard, they would likely be entitled to such an instruction, provided that they had presented evidence of reckless disregard. In any case, we can find nothing in the *Galloway* complaint that would foreclose the *Galloway* plaintiffs from being able to proceed and, given the necessary evidence, prevail at trial on the theory that the Car Rental Companies violated § 1681c(g)(1) with reckless disregard.

For these reasons and because Georgia law dictates that "an insurer must provide a defense against any complaint that, if successful, might *potentially* or *arguably* fall within the policy's coverage," *Elan Pharm. Research Corp.*, 144 F.3d at 1375 (emphasis added), the knowing-conduct exclusion does not relieve the Insurance Companies of their obligation to provide a defense to the *Galloway* Action if the Policies otherwise provide coverage.

### B.  The Coverage Provisions

Because the exclusion provisions do not eliminate the possibility that the Insurance Companies must provide a defense to the Car Rental Companies in the *Galloway* Action, we are faced with the question of whether the Policies provide coverage for the conduct alleged in the *Galloway* complaint.  As we have noted, the district court did not have the opportunity to address this question, so we must decide whether to consider it for the first time now.

"It is the general rule . . . that a federal appellate court does not consider an issue not passed upon below."  *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S. Ct. 2868, 2877 (1976).  While an appellate court enjoys discretion to address issues not ruled on by the district court, an appellate court should exercise that discretion only where the circumstances warrant such review.  *Id.* at 121, 96 S. Ct. at 2877. The Supreme Court has not set forth an exhaustive list of circumstances that might justify initial consideration of an issue at the appellate-court level, but it has

16

identified two such situations:  "where the proper resolution is beyond any doubt"

and "where injustice might otherwise result."  *Id.* (citations and internal quotation

marks omitted).  Here, neither applies.

First, the proper resolution is not "beyond any doubt."  The *Galloway* Action

alleges that the Car Rental Companies willfully provided non-conforming credit-

card receipts to their customers in violation of § 1681c(g)(1).  Both the Insurance

Companies and the Car Rental Companies agree that the Policies do not cover the

Car Rental Companies' provision of violative credit-card receipts to the credit-card

account owner.  This is because although the Policies cover "personal injury"

resulting from "publication of material" that gives "unreasonable publicity to a

person's private life" and "publication of material that violates a person's right to

privacy," the parties agree that the term "publication" contemplates dissemination

to at least someone other than the person who provided the card information at

issue to the Car Rental Companies.[9]  Since the Car Rental Companies do not

suggest that the term "publication" is ambiguous or that it could reasonably be

construed as including a vendor's provision of a violative receipt to only the

paying cardholder, *see W. Pac. Mut. Ins. Co. v. Davies*, 601 S.E.2d 363, 368-69

(Ga. Ct. App. 2004), we need not and do not consider whether the term

---

[9] The Car Rental Companies accept that the definition of "publication" includes dissemination to the public, despite the fact that they maintain that the Travelers General Commercial Liability Policies control (as opposed to the Web Endorsement), which provides for personal injuries caused by "publication, in any manner."

"publication" as used in the Policies in this case can include the return of a violative receipt to the paying cardholder.

But the Car Rental Companies assert that, under their business model, they accept payment at the time of rental from the person producing the credit card and provide credit-card receipts to the individual returning the rental car, who may not be the same as the person who paid for the rental of the vehicle in the first place—and who may not be an owner of the credit-card account used to pay for the rental. Regardless of whether the person returning the rental car owns the credit-card account for which the Rental Car Company provides a receipt, the Car Rental Companies claim that they consider the person returning the car to be a customer and further argue that they could be held liable under the *Galloway* Action for engaging in such conduct. As the Car Rental Companies view their Policies, the Policies provide coverage for any conduct involving providing non-conforming receipts to people other than the credit-card account owners. Whether that is correct turns on two questions: whether § 1681c(g)(1) prohibits vendors from providing non-truncated credit-card receipts to their customers for credit-card accounts that their customers do not own, and, if so, whether the *Galloway* complaint can arguably be read to encompass such violations.

Section 1681c(g)(1) prohibits "print[ing] more than the last five digits of the [credit] card number or the expiration date upon any receipt provided to the

18

cardholder . . . ."  15 U.S.C. § 1681c(g)(1).  "[O]ur authority to interpret statutory language is constrained by the plain meaning of the statutory language in the context of the entire statute, as assisted by the canons of statutory construction." *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010).  Within this framework, we start our analysis by evaluating whether the statutory language is clear and unambiguous.  *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001).  If so, we also end our analysis there.  *Id.*  But we have recognized one exception to this procedure:  "courts may reach results inconsistent with the plain meaning of a statute if giving the words of a statute their plain and ordinary meaning produces a result that is not just unwise but is clearly absurd."  *Id.* at 1228 (citation and quotation marks omitted).  The circumstances in which this exception applies, however, are "rare[]" and "exacting."  *Id.*

Here, at first blush, the statutory language appears to be clear and unambiguous:  § 1681c(g)(1) prohibits "print[ing] more than the last five digits of the [credit] card number or the expiration date upon any receipt provided *to the cardholder* . . . ."  (emphasis added).  "Cardholder," however, is not defined in 15 U.S.C. § 1681a, which sets forth the definitions and rules of construction pertaining to § 1681c(g)(1).  Section 1681a(r) does define the term "credit card," though, as having "the same meaning as in section 1602 of this title."  15 U.S.C. § 1681a(r)(2).  And surveying the other definitions in § 1602, we observe that §

19

1602(n) defines the term "cardholder" to mean "any person to whom a credit card is issued or any person who has agreed with the card issuer to pay obligations arising from the issuance of a credit card to another person." So some might suggest that we should apply this same definition to the word "cardholder" in § 1681c(g)(1).

But, under the clear language of § 1602, the definitions set forth in that section "are applicable for the purposes of [Subchapter I of Chapter 41 of Title 15]." 15 U.S.C. § 1602. Section 1681c(g)(1) does not fall under Subchapter I; instead, it appears under Subchapter III. While we "may consider Congress's use of a particular term elsewhere in the statute to determine its proper meaning within the context of the statutory scheme," *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1168 (11th Cir. 2003) (citation and quotation marks omitted), the fact that Congress imported the definition of "credit card" from § 1602 for purposes of construing Subchapter III but did not also incorporate the definition of "cardholder" found at § 1602 for purposes of interpreting Subchapter III may suggest that Congress made a deliberate decision not to employ § 1602's definition of "cardholder" for purposes of construing § 1681c(g)(1). Indeed, we have also recognized that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."

*Shotz v. City of Plantation*, 344 F.3d 1161, 1168 (11th Cir. 2003) (citations and internal quotation marks omitted).

Moreover, the other definitions found at § 1681a(r), which do apply to the terms appearing in the provisions within Subchapter III, are not the same as the definitions for the same terms that also are defined in Section 1602. *Compare, e.g.*, 15 U.S.C. § 1681a(r)(1) *with* 15 U.S.C. § 1602(*o*) (defining "card issuer" differently); *compare* 15 U.S.C. § 1681a(r)(5) (incorporating by reference definitions of "credit" and "creditor" contained at 15 U.S.C. § 1691a *with* 15 U.S.C. § 1602(f), (g) (setting forth its own definitions of the terms "credit" and "creditor," respectively). In fact, some definitions under § 1681a(r) expressly incorporate definitions from statutory provisions other than § 1602, even though § 1602 also defines the same terms. *See* 15 U.S.C. § 1681a(r)(5) (incorporating by reference definitions of "credit" and "creditor" contained at 15 U.S.C. § 1691a). So presuming that the definition of "cardholder" from § 1602(n) applies for purposes of construing § 1681c(g)(1) may be presuming too much.

But, then, what does "cardholder" mean? If, as the Insurance Companies suggest, the word refers strictly to the person in whose name the credit or debit account is owned, that would mean that FACTA renders a vendor liable for giving the account holder a copy of a receipt with his or her own account number on it, but it allows a vendor to escape with impunity for providing the same non-

21

truncated receipt to anyone other than the person whose account the receipt is for.[10]

Some might suggest that such an interpretation would create plainly absurd results, *see CBS Inc.*, 245 F.3d at 1228, that fly in the face of FACTA's stated purpose of "prevent[ing] identity theft," Pub. L. No. 108-159, 117 Stat. 1952, particularly because FACTA has been described as a remedial statute that should be construed broadly. *See Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 375-76 (3d Cir. 2012); *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1210 (9th Cir. 2011). On the other hand, some might disagree that the results are absurd, since "Congress is not required to address every aspect of a problem whenever it decides to act." *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 484, 115 S. Ct. 1003, 1021-22 (1995) (O'Connor, J., concurring in part and dissenting in part).

In any case, we do not conclude that whether § 1681c(g)(1) prohibits vendors from providing non-conforming receipts of credit-card account owners to persons other than the account owners is clear "beyond any doubt." Under these circumstances, we think that consideration of this issue would benefit from the parties' and the district court's focused attention in the first instance. As this appears to be an issue of first impression, the Federal Trade Commission, which is the agency charged with administering the Fair Credit Reporting Act, which FACTA amended, may also wish to seek to intervene in the district-court

---

[10] No other provision of FACTA appears to create express liability for a vendor who provides someone other than a credit-account owner with a non-conforming credit-card receipt.

22

proceedings under Rule 24(b)(2)(A), Fed. R. Civ. P., and weigh in with its understanding of § 1681c(g)(1).

Nor can we resolve this case without reaching the issue of whether § 1681c(g)(1) can impose liability on a vendor for providing a non-conforming credit-card receipt to a person who does not own the account for which the receipt was provided. As the *Galloway* complaint is written, it alleges that the Car Rental Companies "violated 15 U.S.C. § 1681c(g)(1) . . . ." It does not necessarily limit its claim to reaching only the providing of non-conforming credit-card receipts to the owners of the accounts for which the receipts are issued. To the contrary, the complaint describes the "publication of more than five digits of a credit card or debit card number on customer receipts disseminated at the point of sale" as violative of § 1681c(g)(1), and the parties have already agreed that, at least for purposes of construing the terms of the Policies, the term "publication" necessarily refers to dissemination of the receipt to only someone other than the account owner.

In addition, the complaint proposes a class of "all persons who used . . . [a] debit or credit card . . . at any of Defendant's rental locations where Defendant provided an electronically printed receipt at the point of sale or transaction that violated FACTA's truncation requirements of that person's credit or debit card . . .

23

.”   This language at least arguably makes the *Galloway* claim as broad as § 1681c(g)(1) allows.

Similarly, the complaint alleges the following relevant common questions of fact and law:  "[w]hether [the Car Rental Companies] had a practice of providing *customers* with a sales or transaction receipt which failed to comply with the truncation requirement," and "[w]hether [the Car Rental Companies] thereby violated FACTA."   (Emphasis added).   Under these allegations, it is at least arguable that the Car Rental Companies could be held liable for providing non-account owners with non-truncated credit-card receipts when they returned rental cars, if § 1681c(g)(1) prohibits such conduct.   That is all Georgia law requires for an insurer's duty to defend to be triggered.  *See Elan Pharm. Research Corp.*, 144 F.3d at 1375.   For this reason, the outcome of this case rests entirely on whether § 1681c(g)(1) can impose liability on a vendor for issuing a non-conforming credit-card receipt to someone who is not the owner of the account for which the receipt was issued.

Turning to the second reason for an appellate court to consider an issue for the first time on appeal—if injustice might otherwise result—neither party has identified any injustice that might result from our remand of this action to the district court for consideration of the issue in the first instance.   Nor is any injustice apparent to us.   We similarly find no other reason to vary from the usual rule of

allowing the district court to address the issue before we do.  We therefore remand this matter to the district court for further consideration.

## IV.

For the foregoing reasons, we reverse the judgment of the district court declaring that the Insurance Companies have no duty to defend the Car Rental Companies, and we remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

WILSON, Circuit Judge, concurring in the result:

We are called upon to determine whether the class action complaint filed in the *Galloway* Action alleges only knowing violations of the Fair and Accurate Credit Transactions Act (FACTA)[1] or also alleges violations in reckless disregard of those requirements. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57, 127 S. Ct. 2201, 2208–09 (2007) (holding that a "willful" violation under 15 U.S.C. § 1681n includes both knowing and reckless violations). While I concur in the Majority's conclusion, I write separately to elucidate the finding that the *Galloway* complaint alleges "willfulness" in terms of both knowledge and recklessness, rather than in terms of only knowledge. This being the sole issue on appeal, I would remand on this issue alone, leaving it to the district court to consider, in the first instance, the Insurance Companies' alternative argument that the Policies do not provide coverage for the conduct alleged in the *Galloway* complaint.

The *Galloway* complaint asserts a single cause of action under § 1681n, which imposes civil liability on "[a]ny person who willfully fails to comply with any requirement imposed under [FACTA] with respect to any consumer." To establish a "willful" violation under § 1681n, the class action plaintiffs must show either that the Car Rental Companies knowingly violated FACTA *or* that they acted in reckless disregard of FACTA's requirements. *See Safeco*, 551 U.S. at 57,

---

[1] *See* Fair and Accurate Credit Transactions Act, Pub. L. No. 108–159, 117 Stat. 1952 (2003) (codified at 15 U.S.C. § 1681c(g)).

26

127 S. Ct. at 2208; *see also Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310 (11th Cir. 2009).

Generally speaking, recklessness entails "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco*, 551 U.S. at 68–69, 127 S. Ct. at 2215 (internal quotation marks omitted) (discussing common law and Restatement definitions of "recklessness"). In the context of § 1681n, this means that,

> [t]o prove a reckless violation, a consumer must establish that the action of the agency "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."

*Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009) (quoting *Safeco*, 551 U.S. at 69, 127 S. Ct. at 2215).[2] In other words, a violation of FACTA is not reckless when the violating action is "in accord with an objectively reasonable interpretation of the Act." *Levine*, 554 F.3d at 1319.

Both *Safeco* and *Levine* suggest that recklessness is something more than negligence or mere carelessness. *See, e.g.*, *Safeco*, 551 U.S. at 69, 127 S. Ct. at 2215 (noting, but not pinpointing, a division between negligence and recklessness).

---

[2] To further illuminate the standard, *Levine* provides that, to establish reckless disregard under § 1681n, "[a]n interpretation that favors the agency must be 'objectively unreasonable' under either the text of the Act or 'guidance from the courts of appeals or the Federal Trade Commission that might have warned [the agency] away from the view it took.'" *Levine*, 554 F.3d at 1318 (second alteration in original).

27

We have previously suggested that "recklessness is closer to a lesser form of intent" as opposed to "merely a greater degree of ordinary negligence."  *See McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 n.10 (11th Cir. 1989) (internal quotation marks omitted).  This distinction is bolstered by the existence of a separate section applicable to negligent violations of FACTA.  *See* 15 U.S.C. § 1681o.  Practically, then, both knowing and reckless violations of FACTA first require some knowledge of FACTA's requirements.  Thus, the class action plaintiffs' allegations that the Car Rental Companies had knowledge of FACTA's requirements prior to any violation thereof can be read to allege willfulness in terms of either knowledge or recklessness and not in terms of knowledge alone.

While the exact theory of liability (i.e., knowing violation or reckless disregard) is unknown at present, the class action plaintiffs have stated a claim that "might potentially or arguably fall within the policy's coverage," *Elan Pharm. Research Corp. v. Emp'rs Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998), by alleging nothing more than the Car Rental Companies' knowledge of FACTA's requirements and their "willful failure" to follow and "willful disregard" of those requirements, *see Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1123–24 (11th Cir. 2006) (reasoning allegation of "a willful violation" and claim for damages states prima facie claim under § 1681n).  The nature of the Car Rental

28

Companies' knowledge will prove determinative, but we are not, at this stage, concerned with the certainty of their success.