[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14457
Non-Argument Calendar

_____

D.C. Docket No. 4:13-cv-00139-WTM-GRS

PHILLIP O'DELL,
as Assignee of Roland B. Mahoney and Sandra R. Mahoney,

Plaintiff - Appellant,

versus

PACIFIC INDEMNITY COMPANY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(July 17, 2015)

Before MARCUS, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Phillip O'Dell, as assignee of Roland and Sandra Mahoney ("the Mahoneys"), appeals from the district court's grant of summary judgment in favor of Pacific Indemnity Company ("Pacific Indemnity"), in O'Dell's lawsuit seeking

recovery under an insurance policy covering the Mahoneys' former home.  O'Dell argues on appeal that the district court erred in granting summary judgment to Pacific Indemnity because: (1) the court failed to consider covered claims for physical damage; (2) diminution in value resulting from misrepresentation amounts to covered property damage; and (3) even if no coverage existed, Pacific Indemnity breached its duty to defend the Mahoneys.  After careful review, we affirm.

We review an order granting summary judgment de novo, viewing all of the facts in the light most favorable to the non-movant.  Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1161-62 (11th Cir. 2006).  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  After the party moving for summary judgment shows the absence of a genuine issue of material fact, the burden shifts to the non-movant, who must present affirmative evidence to show that a genuine issue of material fact exists.  Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006).  We may affirm the district court's judgment based on "any ground supported by the record, regardless of whether that ground was relied upon or even considered by the district court."  Kernel Records Oy v. Mosley, 694 F.3d 1294, 1309 (11th Cir. 2012).

"Under Georgia law [which the parties agree applies], contracts of insurance are interpreted by ordinary rules of contract construction."  Boardman Petroleum,

2

Inc. v. Federated Mut. Ins. Co., 498 S.E.2d 492, 494 (Ga. 1998). Where the terms are unambiguous, we "look to the contract alone to ascertain the parties' intent." Id. Although ambiguities are construed against the insurer, we consider the contract as a whole and give each provision its intended effect. Id.

The facts viewed in the light most favorable to O'Dell are these. The Mahoneys owned a home in Savannah, Georgia (the "Property") that was damaged by flooding. The Mahoneys insured the Property with a "Masterpiece" Policy issued by Pacific Indemnity (the "Policy"). The Policy included "Personal Liability Coverage," covering "damages a covered person is legally obligated to pay for personal injury or property damage which take[s] place anytime during the policy period and are caused by an occurrence." Thus, Pacific Indemnity was obliged to defend the Mahoneys from "any suit seeking covered damages for personal injury or property damage." "Property damage" was defined as "physical injury to or destruction of tangible property, including the loss of its use." "Occurrence" was defined as "an accident or offense to which this insurance applies and which begins within the policy period. Continuous or repeated exposure to substantially the same general conditions unless excluded is considered to be one occurrence." However, "[d]amage to covered person's property" was excluded from the Personal Liability Coverage -- meaning there was

3

no personal liability coverage "for property damage to property owned by any covered person."

Philip O'Dell contracted to purchase the Property. As part of the agreement, O'Dell received a disclosure statement that omitted the prior flooding experienced by the Mahoneys. The sale of the Property closed on February 14, 2005, and the Mahoneys cancelled the Masterpiece policy effective February 15, 2005.

Sometime later, O'Dell experienced flooding and septic problems at the Property. He subsequently learned that the Property had sustained flood damage while the Mahoneys owned it. O'Dell filed suit against the Mahoneys in the State Court of Georgia on March 17, 2008. Through a series of amended complaints, O'Dell alleged claims against the Mahoneys for negligent failure to disclose prior flooding and septic issues, misrepresentation, and breach of contract relating to the sale of the Property. Specifically, O'Dell argued that his damages included the cost to "repair [flood and septic] damage" and "diminution of the property's value." The Mahoneys requested a defense under the Masterpiece Policy. Pacific Indemnity refused to defend or indemnify the Mahoneys because O'Dell's complaint did not seek covered damages and, alternatively, because any otherwise covered damages were excluded by the Policy.

Prior to trial in the underlying suit, O'Dell settled with the Mahoneys for the maximum amount of coverage under the Policy ($500,000), but agreed not to

enforce the settlement against the Mahoneys.  Rather, the Mahoneys assigned to O'Dell their rights and interests in any claims they had against Pacific Indemnity. O'Dell filed the instant action against Pacific Indemnity in the State Court of Georgia seeking damages, as assignee, for Pacific Indemnity's "bad faith" refusal to defend and indemnify the Mahoneys in the underlying litigation.  Pacific Indemnity removed this suit to the United States District Court for the Southern District of Georgia.  The district court granted Pacific Indemnity's motion for summary judgment, finding that O'Dell's complaint did not allege covered "property damage" because it alleged only economic losses, which were not covered by the Policy.

O'Dell's first argument on appeal is that the damages he alleged in the underlying suit were not purely economic.  Rather, he also sought the "cost of repairs" for physical damage due to flooding and septic problems.  This argument ignores the undisputed facts and the plain language of the Policy.  The "cost of repairs" sought by O'Dell could mean one of only two things: (1) the repair of damage that occurred after O'Dell purchased the Property; or (2) the repair of damage that occurred while the Mahoneys still owned the Property.  Neither alternative alleges covered, non-excluded damages.

To the extent we construe the underlying complaint to seek repair costs for damage that occurred after the closing, the Policy plainly provides no coverage.

The Policy's Personal Liability Coverage unambiguously states that it covers only "property damage which takes place anytime during the policy period and [is] caused by an occurrence." Because the Mahoneys cancelled the Policy on February 15, 2005, any post-closing flood damage did not "take[] place anytime during the policy period." Thus, no coverage exists under the unambiguous terms of the Policy. See Planters & Citizens Bank v. Home Ins. Co., 786 F. Supp. 977, 985-87 (S.D. Ga. 1992) (noting that, under Georgia law, physical damage sustained outside the effective date of an insurance policy is not covered).

To the extent we construe O'Dell's underlying complaint to seek repair costs for damage that occurred while the Mahoneys still owned the Property, his argument likewise fails. "Damage to covered person's property" is expressly excluded from the Personal Liability Coverage. Thus, any liability for flood damage that occurred while the Mahoneys owned the property would be excluded as personal liability "for property damage to property owned by any covered person [here, the Mahoneys]." See, e.g., Claussen v. Aetna Cas. & Sur. Co., 754 F. Supp. 1576, 1578-79 (S.D. Ga. 1990) (noting that owned property exclusions bar coverage for liability arising from damage to property owned by the insured person). Regardless of how we construe O'Dell's underlying complaint, it did not allege a covered, non-excluded claim for the cost of repairs.

6

O'Dell's second argument is that the Policy provides coverage for the diminution in the Property's value resulting from the Mahoneys' misrepresentation that no prior flooding had occurred.  But the district court did not err by finding that O'Dell's claim for diminution in value (a purely economic loss) was not covered "property damage."  "Property damage" is defined by the Policy as "physical injury to or destruction of tangible property, including the loss of its use."  Assuming that the diminution in value occurred during the Policy period, it still did not involve any physical injury to or destruction of tangible property and, thus, the Policy does not provide coverage.  See Nationwide Mut. Ins. Co. v. Bader & Assocs., Inc., No. 2:13-CV-00032-RWS, 2014 WL 231980, at *4 (N.D. Ga. Jan. 22, 2014) ("The damages claimed [loss of the rental value of more than 20 homes caused by a misrepresentation regarding the number of functional bedrooms in light of limited septic capacity] . . . are purely economic losses which do not constitute 'property damage' under the definition in the Policies at issue.").

Indeed, courts have noted that "cases are virtually unanimous in their holdings that damages flowing from misrepresentation and/or fraud have no basis in property damage." State Farm Fire & Cas. Co. v. Brewer, 914 F. Supp. 140, 142 (S.D. Miss. 1996); see id. ('[T]he only cognizable damages from such torts are economic and contractual in nature and as such do not fall within the scope of coverage afforded by policies like [the one at hand]."); Safeco Ins. Co. of Am. v.

7

Andrews, 915 F.2d 500, 502 (9th Cir. 1990) (noting that a misrepresentation that materially impacts the value of a property does not constitute "damage to tangible property," but only "economic loss," which is "outside the scope of the [insurance] policy"). Because O'Dell's claim for diminution in value was purely economic in nature, the district court did not err by finding that it did not constitute covered "property damage" under the Policy.[1]

Finally, O'Dell argues that even if the Policy does not provide coverage for the underlying claims, Pacific Indemnity breached its obligation to defend the Mahoneys. It is true that "an insurer's duty to defend is broader than its duty to indemnify." Shafe v. Am. States Ins. Co., 653 S.E.2d 870, 873 (Ga. Ct. App. 2007). The Policy itself contemplates an obligation to provide coverage "even if the suit is groundless, false, or fraudulent." However, both meritorious and non-meritorious suits may allege facts that do not implicate coverage -- yielding no duty for the insured to defend. See Great Am. Ins. Co. v. McKemie, 259 S.E.2d 39, 40 (Ga. 1979) ("[A] distinction must be drawn between groundless suits and actions which, even if successful[,] would not be within the policy coverage."

---

[1] O'Dell relies primarily on a Supreme Court of Colorado case to argue that economic damages resulting from a misrepresentation in the sale of property can constitute covered "property damage." See Cyprus Amax Minerals Co. v. Lexington Ins. Co., 74 P.3d 294 (Colo. 2003). However, Cyprus involved an alleged misrepresentation in the sale of a mine that was insured by a policy with a "completed operations" clause -- extending coverage beyond the date of the sale -- which expressly contemplated that "'property damage' can arise from 'reliance on a representation.'" Id. at 307. Thus, Cyprus does not support a different result in this case. In any event, we're bound by Georgia law.

(quotation omitted)).  As demonstrated above, even taking all of the facts alleged by O'Dell as true, he simply did not allege a claim that would be covered by the Policy.  Thus, the district court did not err by finding no duty for Pacific Indemnity to defend the Mahoneys in the underlying suit.

   **AFFIRMED.**